501 P.2d 407

Simon CHALPIN, Petitioner,

v.

MOBILE GARDENS, INC. et al.,
Respondents.

MOBILE GARDENS, Petitioner,

v.

Simon CHALPIN et al., Respondents.

No. 1 CA–CIV 2022.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 14, 1972.

Rehearing Denied Oct. 20, 1972.

Review Denied Nov. 21, 1972.

**232**

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Phoenix, for Simon Chalpin.

Burch, Cracchiolo, Levie, Guyer & Weyl by K. C. Weyl, Phoenix, for Jack E. Evans and Evans & Kunz, Ltd.

Lewis & Roca by David L. Cocanower, Phoenix, for Joe Acosta.

Harold Goldman, Phoenix, for Mobile Gardens, Inc.

JACOBSON, Judge.

This opinion involves two special action petitions filed in this court arising out of a single order of disqualification of a judge.

In order to place this multiple issue and party litigation in proper perspective it is necessary to lay some factual background. Originally, Simon Chalpin, as plaintiff, brought an action against Mobile Gardens, Inc., its Board of Directors, its accountant, Joe Acosta, and its attorney, John G. Brennan, generally alleging misrepresentations which wrongfully induced Chalpin to enter into a contractual relationship with Mobile Gardens. At this time Chalpin was represented by Jack E. Evans of the law firm of Evans & Kunz, Ltd. (hereinafter collectively referred to as Evans). In that original action Mobile Gardens filed a counterclaim against Chalpin asserting that Chalpin together with his attorneys had conspired to deprive Mobile Gardens of its property. Concurrent with the counterclaim, Mobile Gardens sought to have Evans joined as parties defendants and to file a cross-claim against them. The case was assigned to the respondent Judge, The Honorable Charles L. Hardy.

On September 10, 1971, Judge Hardy set various pending motions in the case for hearing, including a motion for partial summary judgment and the motion to add Evans as additional parties defendants. On that date Jack E. Evans appeared and argued against the granting of the motion to add additional parties. On September 13, 1971, Judge Hardy entered his order denying the motion to join Evans as parties to the lawsuit. Mobile Gardens sought review of this denial by way of special action both in this Court and in the Supreme Court, both courts declining to accept jurisdiction. Jack E. Evans appeared in both appellate courts in opposition to the special action.

On December 17, 1971, Judge Hardy granted a motion for summary judgment in favor of Mobile Gardens as to all but Count ONE of Chalpin's complaint, and reversed himself as to the motion of Mobile Gardens to join Evans as additional parties defendants and permitted them to be added as defendants. In addition, Judge Hardy separated the trial of respondent Acosta from that of defendant Brennan. (Judge Hardy had previously granted Chalpin summary judgment against Mobile Gardens on Count ONE of the complaint.) At this point there still remained to be litigated Chalpin's complaint for negligence against Acosta and Brennan (Acosta's trial being separated from the trial of Brennan) and the counterclaim and cross-claim of Mobile Gardens against Chalpin and Evans. Following Judge Hardy's order joining Evans as defendants, Evans moved the court to reconsider, which was denied. Following this denial on February 15, 1972, the court allowed Evans to withdraw as counsel for Chalpin.

On February 25, 1972, Jack E. Evans filed (on his own behalf as a party litigant) an affidavit of bias and prejudice to disqualify Judge Hardy from proceeding further in the case. It is conceded by all parties that this affidavit for disqualification was in the nature of a peremptory challenge and was not based upon actual bias and prejudice. *See* West v. Superior Court, 104 Ariz. 1, 448 P.2d 57 (1968).

After a hearing on this affidavit of disqualification, Judge Hardy entered the order which is the subject matter of these special actions. Judge Hardy's memorandum and order in part stated:

"Counsel for the defendant Mobile Gardens . . . urged that the affidavit of disqualification was not timely filed and that the undersigned judge should not disqualify himself. However, until December 17, 1971, Jack E. Evans was not a *party* in this action. The fact that his law firm had represented plaintiff from the commencement of the action until that date did not, in the court's opinion, preclude him from exercising a timely disqualification of judge once he became a party.

"IT IS ORDERED overruling the objections of the defendants Mobile Gardens . . . to the court's honoring the affidavit of disqualification." (Emphasis in original.)

The order went on to state, however:

"In the court's opinion, when the legislature enacted the foregoing statutory provision [A.R.S. § 12–409(A)], it did not take into consideration that a civil action may include multiple parties and multiple claims, counterclaims and cross-claims. The statute simply refers to 'either party to a civil action' which normally would mean either a plaintiff or a defendant. Judicial construction may expand the meaning of the language of the statute to include situations where parties who are not strictly plaintiffs or defendants are involved. However, this court cannot read into the statute a requirement that when one party in a case involving multiple parties and multiple claims files an affidavit of disqualification, the Court must transfer a claim which does not involve the party who filed the affidavit of disqualification.

"The defendant Acosta having moved that the court retain jurisdiction of plaintiff's claim against him as alleged in Count 5 and the plaintiff Chalpin and the counter-defendant Jack E. Evans having objected thereto, IT IS ORDERED granting the motion."

By this order Judge Hardy has disqualified himself from hearing any matters in the case except the Acosta matter which had been previously separated for trial purposes and as to this matter he intends to retain jurisdiction and to preside.

The score card participants in this Court are as follows:

1. Mobile Gardens has filed a special action contending that Judge Hardy improperly disqualified himself in this case, because the Evans affidavit was untimely. Chalpin and Evans oppose this petition. Acosta takes no position either way.

2. Chalpin has filed a special action contending that Judge Hardy having disqualified himself in the litigation, had no authority to retain jurisdiction of the Acosta matter, which is a part of that litigation. Evans supports this position, Acosta opposes it, and Mobile Gardens takes no position as to this aspect of the case.

The issues thus framed are:

(1) Was the Evans' affidavit for disqualification of Judge Hardy untimely?

(2) If not, may Judge Hardy disqualify himself from only a portion of the litigation?

In Judge Hardy's memorandum opinion and order which is the subject of this litigation, he concluded as follows:

"Rule 42(f), Rules of Civil Procedure, did not take effect until March 1, 1972, and all of the court's rulings were made before that date. Accordingly the determination of this issue must be governed by a construction of A.R.S. 12–409(A) . . . ."

We adopt this conclusion on a factual basis, and therefore, limit our consideration of the issues presented here as if they

arose under A.R.S. § 12–409. This statute in its pertinent parts provides:

"If either party to a civil action in a superior court files an affidavit . . . the judge shall at once transfer the action . . . ."

The resolution of the first issue turns upon a determination of when a litigant becomes a "party" to the action within the meaning of A.R.S. § 12–409, subsec. A and whether the trial court heard any evidence in a contested setting as to that "party" prior to the affidavit of disqualification having been filed.[1] Both Chalpin and Evans contend that Evans did not become a "party" to this litigation until there was a formal order of the trial court joining Evans as additional parties defendants, which did not occur until December 17, 1971. Evans further contends that until they were formally a "party" they had no right to file an affidavit under A.R.S. § 12–409, subsec. A and therefore as to them their affidavit was timely. The trial court in general agreed with this contention. Mobile Gardens, however, argues that the affidavit was untimely but even if timely, Evans was so closely allied with the prior proceedings that under the authority of Edwards v. Superior Court, 5 Ariz.App. 211, 424 P.2d 859 (1967) the Evans affidavit must be considered untimely.

■■■■ Normally, in the run-of-the-mill one plaintiff versus one defendant litigation, the plaintiff becomes a "party" to the litigation by filing his complaint and the defendant becomes a "party" when served with process. However, even in this one-to-one litigation we do not believe it could be seriously argued that the supposed defendant could not appear in court and argue that he should not be made a formal "party" to the litigation because of various jurisdictional or due process defenses at which time the defendant's right to file an

affidavit of disqualification would also arise. It is in this sense that courts have defined a "party" as one who is directly interested in the subject matter of the suit or some part thereof, who has a right to make defenses, control proceedings, and examine and cross-examine witnesses. City of Chattanooga v. Swift, 223 Tenn. 46, 442 S.W.2d 257 (1969); Mayhew v. Deister, 144 Ind.App. 111, 244 N.E.2d 448 (1969); Anderson v. Miller, 324 P.2d 856 (Okl.1958). It is thus not the formalization of the existence of the "party" status by order of the court which makes a person a "party" to the action, but rather it is the right to appear and contest which is controlling. This *right* comes into existence upon subjecting oneself, to the jurisdiction of the court (the plaintiff by filing his complaint) or by the apparent exercise of the court's jurisdiction over a person (service of process upon the defendant). We find no reason to believe that this accepted definition of "party" should have any other connotation when used in A.R.S. § 12–409, subsec. A. We therefore hold that a "party" as used in A.R.S. § 12–409, subsec. A means a person who has a right to appear and contest any litigated issue in court.

This does not, however, completely answer the question of Evans' status before the trial court. Let us assume that in A versus B litigation, B desires to add C as a "party" to that litigation. Let us further assume that B has filed a Rule 14 motion, Rules of Civil Procedure, 16 A.R.S., for leave to file a third-party complaint and summons, and C is not served with that motion. A appears and contests that motion, but C does not appear, and the court by order grants the motion. C, under our previous analysis, does not become a "party" by the order granting the motion of B but would only become a "party" upon

1. Although a "party" under A.R.S. § 12–409, subsec. A has a right to file a disqualifying affidavit against the judge, that right may be waived by allowing the judge to receive evidence on contested issues of law or fact which evidence will be used and weighed in deciding the ultimate issues. Truck Equipment Co. of Arizona v. Vanlandingham, 103 Ariz. 402, 442 P.2d 849 (1968); Marsin v. Udall, 78 Ariz. 309, 279 P.2d 721 (1955).

service of process upon him at which time his *right* to appear first comes into existence together with his concurrent right to file an affidavit under A.R.S. § 12–409, subsec. A.

Let us assume, however, in this same factual setting that B serves upon C a copy of B's motion for leave to join C as a party, and C appears and contests his joinder. Under our definition of a "party", C, being interested in the subject matter of the litigation and having subjected himself to the jurisdiction of the court became a "party" to the litigation within the meaning of A.R.S. § 12–409, subsec. A upon his appearance at the contested motion hearing.

■ We use the above illustration to point out the complex problem involved here, where the party sought to be joined is counsel for an existing party to the action (A in our example) and appears and contests the joinder. From the record before this Court we are unable to determine whether Jack E. Evans in appearing and contesting his joinder was acting in his representative capacity as counsel for Chalpin or whether his appearance was on his own behalf. We are forced to assume, in the absence of evidence to the contrary, that the trial court properly concluded in holding that the filing of the affidavit of disqualification was timely, that Evans appeared solely representing his client Chalpin and had not thus subjected himself individually to the jurisdiction of the court. In making this factual assumption we are drawn to the legal conclusion that Evans did not become a "party" to the action until their formal appearance was made at which time they first became entitled to the right to file an affidavit of disqualification pursuant to A.R.S. § 12–409, subsec. A. After this right first came into existence, there is nothing in the record to indicate the trial court received any evidence or ruled on any contested issue of law in this matter, and we therefore hold that the Evans affidavit of disqualification was timely.

We are also of the opinion that the principles enunciated in Edwards v. Superior Court, *supra,* do not change this result. In the *Edwards* case the court held that where the *alter ego* of a corporation had waived the right to disqualify a judge, the corporation had also waived that right. The court was careful to point out, however, that this holding was applicable only "under the restrictive facts of this particular case." There is no showing that Evans, in this case, is the *alter ego* of their client, and in fact, the claim against Evans and Chalpin sounds in conspiracy which by its nature requires two or more individuals. For this reason we hold *Edwards* to be inapplicable to the situation before this court.

By reason of the foregoing we deny the relief requested by petitioner Mobile Gardens, Inc. seeking to invalidate the disqualification of Judge Hardy.

We turn now to the issue raised by the Chalpin special action—whether Judge Hardy improperly refused to disqualify himself in the Acosta claim. The resolution of this issue requires the construction of the term "transfer the action" as it is used in A.R.S. § 12–409, subsec. A which provides in part:

"A. If either party to a civil action in a superior court files an affidavit alleging any of the grounds specified in subsection B, the judge shall at once *transfer the action to* another division of the court if there is more than one division, or shall request the judge of the superior court of another county to preside at the *trial of the action.*"

It is to be noted that the word "action" appears three times in this statute: (1) "If either party to a civil *action,*" (2) "the judge shall immediately transfer the *action*", and (3) "to preside at the trial of the action".

The problem confronting the court is to determine whether the word "action" was intended to have the same meaning in all

three instances. The term "civil action" in the first instance has been fairly well defined. In Stephens v. Stephens, 17 Ariz. 306, 152 P. 164 (1915), a "civil action" was defined as a "lawful demand for a legal right in accordance with the procedure prescribed by the statute." In accordance with this definition *Stephens* held that a petition to modify a decree of divorce was a separate "civil action" giving rise to the right to file an application for change of judge. We recently, in the case of Hofstra v. Mahoney, 18 Ariz.App. 4, 499 P. 2d 735 (filed July 18, 1972), applied this definition of "civil action" in reaching a like result on a petition to modify a divorce decree. Under this judicial interpretation of the word "action" it would follow that every party in a multiple party litigation who exerted a lawful demand for a legal right or who had such a right exercised against him, be he plaintiff, defendant, counter-plaintiff, counter-defendant, cross-plaintiff, cross-defendant, third-party plaintiff or third-party defendant, would be entitled to exercise the right under A.R.S. § 12–409 to a peremptory challenge to a judge.[2]

It further logically follows that if this same definition of "action" is applied where that word is used in the statute directing the judge to "transfer the *action*" to another judge who shall "preside at the trial of the *action*", the respondent court's order in this matter was correct, for he only transferred the action—the lawful demand for a legal right—in which the party claiming bias and prejudice was affected.

In essence, under this interpretation the word "action" is synonomous with the word "claim". *See* Developments in the Law, Multiparty Litigation in The Federal Courts, 71 Harv.L.Rev. 874 (1958).

However, in our opinion, the legislature did not intend such a result. Without getting deeply into the topsy-turvy world of interpretation of legislative intent,[3] it appears more reasonable that the word "action" as used in "transfer the action" and "preside at the trial of the action" was intended to be used in its generic sense as the entire judicial proceeding. Webster's New International Dictionary (3rd ed. 1961). This is based upon the rationale of the Rules of Civil Procedure which were designed to avoid duplicity of litigation and to consolidate and simplify rather than to fragment and complicate. Arizona Title Ins. & Trust Co. v. Kelly, 11 Ariz.App. 254, 463 P.2d 838 (1970); Pinkerton v. Pritchard, 71 Ariz. 117, 223 P.2d 933 (1950). Under the interpretation urged by Acosta it would be possible for several separate judges to hear several lawsuits all of which initially could have been determined in a single litigated setting. Such could further result in duplicity of presentation of evidence, and possibly conflicting rulings on similar issues of law and evidence.

While this particular litigation is not initially susceptible to this criticism, since the Acosta matter has previously been separated for purpose of trial,[4] we are of the

---

2. This multiplicity of challenges has been foreseen and forestalled in Rule 42(f) (1) (A), Rules of Civil Procedure, 16 A.R.S., (effective March 1, 1972) by providing that:
   "In any action . . . each side is entitled as a matter of right to a change of one judge . . . . Each action, whether single or consolidated, shall be treated as having only two sides."

3. Section 500 of the 1913 Code, predecessor of A.R.S. § 12–409, provided that upon disqualification, the judge shall "at once request the judge . . . of

some other county . . . to preside at the trial of such action, and *to hear all the matters involved therein.*" (Emphasis added.) The language "all the matters involved therein", susceptible of meaning that the disqualified judge relinquished all jurisdiction over the entire case, disappeared in the 1928 Code, R. C.A. § 3721 (1928), never to reappear.

4. Mobile Gardens points out that one of the issues remaining in the Chalpin versus Acosta and Brennan litigation is the right of a third party to hold a professional individual liable for negligence when such third party has not employed

opinion that the disadvantages inherent in piecemeal litigation are so great as to require that in all cases where a judge has been disqualified he must step aside from all aspects of the litigation.

We therefore hold that when a judge has been properly disqualified he must transfer the entire proceedings to another judge and may not retain jurisdiction over any portion of the litigation.

For the foregoing reasons, the special action relief requested by Chalpin is granted and the respondent Judge is directed to disqualify himself in the Acosta litigation.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concur.

the professional. Judge Hardy having retained the Acosta matter, but having disqualified himself in the Brennan matter, has created a situation which could result in conflicting legal rulings on this issue.