Bruce M. BECKORD, Bob Copper, Robert L. Collard, Edward Grueff, Gerard Pearson, James Durward, Goran Svenonius, Nick Kane, Penny L. Kane, Nicky's Restaurant and Lounge, Ltd., a Colorado Corporation; Nicky's Restaurant, Lounge and Motor Lodge, a Colorado Corporation; Perry E. Bartlett and Audrey M. Bartlett, d/b/a Deer Crest Chalets; Don L. Heinemann and Nelrose R. Heinemann, d/b/a The Villager Motel; Crossed Fingers, Inc., d/b/a Eiker's Motor Inn, a Colorado Corporation; Aldon and Elizabeth Olson, Ronald C. Brodie; Brodie's Supermarket, Inc., Lonigan's, a Colorado General Partnership; Parkwheel Corporation, a Colorado Corporation, Steven Nagl, Lon Kinnie; Lloyd Meyers and Mary M. Meyers; Charlotte Miller, d/b/a "Indian Village" and Apropo, Inc., Petitioners,

v.

The DISTRICT COURT OF the COUNTY OF LARIMER In the EIGHTH JUDICIAL DISTRICT, State of Colorado; and The Honorable William F. Dressel, one of the Judges thereof, Respondents.

No. 84SA349.

Supreme Court of Colorado,
En Banc.

April 15, 1985.

Rehearing Denied May 6, 1985.

French & Stone, P.C., Joseph C. French, David M. Haynes, Miller, Gray & Hale, P.C., Robert Bruce Miller, Bragg & Dubofsky, P.C., Frank N. Dubofsky, Boulder, for petitioners.

William F. Dressel, Fort Collins, pro se.

March, Myatt, Korb, Carroll & Brandes, Robert W. Brandes, Jr., Fort Collins, for Shareholders, Directors, and Employees of Farmers Irrigating Ditch and Reservoir Co. (defendants in respondent Court).

DeMoulin, Anderson, Campbell & Laugesen, P.C., Laird Campbell, Denver, for

Town of Estes Park (defendant in respondent Court).

NEIGHBORS, Justice.

This is an original proceeding filed by the petitioners pursuant to C.A.R. 21. We issued a rule to show cause why the respondent judge should not be disqualified from presiding over the consolidated cases pending in the Larimer County District Court. We now make the rule absolute.

### I.

On July 15, 1982, the Lawn Lake Dam in Larimer County collapsed and released a large volume of water into a stream known as the Roaring River, which, in turn, emptied the water into the Fall River which overflowed its banks. When the overflow reached the Cascade Lake Dam, the dam collapsed. The surging waters then flowed into the Town of Estes Park and over and through the properties of the petitioners.[1]

As a result, at least ten separate lawsuits were filed by the petitioners in the District Courts for Denver and Larimer Counties. The damage claims for injuries to persons and property were asserted against the Farmers Irrigating Ditch and Reservoir Company and its shareholders, the owners of the Lawn Lake Reservoir (Farmers). Also named as defendants in the litigation were the Town of Estes Park (Estes Park) which owned the Cascade Lake Dam and the State of Colorado, Department of Natural Resources (State).

In January 1983, Estes Park initiated proceedings under C.R.C.P. 42.1 and requested that all of the litigation be consolidated in one judicial district and transferred to a single district judge pursuant to the provisions of that rule. Thereafter, the multi-district panel held a hearing, certified the cases to the chief justice in accordance with C.R.C.P. 42.1(h), and recommended that Judge William F. Dressel of the Larimer County District Court be assigned to hear the consolidated cases. On April 15,

1983, then Chief Justice Paul V. Hodges assigned Judge Dressel to preside over the consolidated actions, *Beckord v. Farmers Irrigating Ditch & Reservoir Co.*, No. 83–MDL–2.

As part of the supervisory orders entered by Judge Dressel, lead counsel was appointed for the plaintiffs and the defendants. On September 21, 1983, Joseph C. French of Boulder was designated lead counsel for the claimants and Robert W. Brandes, Jr. of Fort Collins was assigned as lead counsel for the defendants. The two lead attorneys were designated by Judge Dressel as the spokespersons to maintain contact with the court on behalf of the claimants and defendants.

Discovery proceedings were conducted in accordance with the respondent's order. Thereafter, the defendants filed motions for summary judgment and/or dismissal. Oral arguments on the motions were heard by Judge Dressel on June 1, 1984.

While the motions were under advisement, Judge Dressel telephoned Frank N. Dubofsky, counsel for some of the claimants, and David Brougham, counsel for the State. From the documents filed with this court it is unclear whether a separate telephone call was placed to each attorney or a conference call involving both attorneys was held. However, Judge Dressel and Dubofsky somewhat disagree as to the nature of the information discussed during the course of their telephone conversation. In his affidavit, Dubofsky states:

1. In late June 1984, I received a phone call from Judge William Dressel informing me that a problem existed (appearance of impropriety) with him deciding part of the Case No. 83–MDL–2, In Re: Various Claimants Against The Farmers Irrigating Ditch & Reservoir Company, and he was referring it to another judge for determination. I asked for the reasons for this reassignment or disqualification and other than indicating

---

1. This factual background is taken from the allegations made in one of the complaints which was filed with this court in connection with the multi-district proceedings under C.R.C.P. 42.1. Whether the claimants can prove the facts alleged remains to be determined.

a problem with him (appearance of impropriety) and the Defendant State of Colorado, he would not tell me the basis of the problem. He also indicated no further rulings would occur until the State of Colorado case was decided by another judge. On July 18, 1984, Judge Dressel ruled on the remaining issues.

In addition, the petitioners' amended petition for relief pursuant to C.A.R. 21 contains the following statement:

Judge Dressel, in his August 1, 1984 Order, denies stating that he had a conflict. Although there may be a dispute about all of the particulars of everything that he has stated, counsel Dubofsky and Brougham both agree that essentially Judge Dressel states he was referring a portion of the case to another judge because of an appearance of impropriety.[2]

In his response to the rule to show cause, Judge Dressel states:

Mr. Dubofsky did inquired [sic] directly as to the reason for having Judge Newton hear the issues involving the State of Colorado. He was advised of Respondent's belief that the Respondent had the authority to have another judge address separate and distinct issues. He did inquire as to whether or not a conflict existed and was advised that was not the

basis for the assignment. Mr. Dubofsky raised the question as to whether or not the appearance of impropriety was the reason. Respondent recalled some discussion about appearances, although such was not the reason stated for the reassignment.

Judge Dressel arranged to have the motions involving the State reargued before Judge A. Arnaud Newton in August 1984. Judge Dressel does not dispute Dubofsky's statement in his affidavit that during the telephone conversation Judge Dressel "indicated no further rulings would occur until the State of Colorado case was decided by another judge." However, the respondent issued his written rulings on the claims against Farmers and Estes Park on July 18, 1984.[3] On July 17, 1984, the petitioners prepared a motion to disqualify Judge Dressel and a motion for clarification in which they requested the judge to state in writing the reasons for his recusal from the claims involving the State, both of which were filed with the respondent court on July 18, 1984, at 4:45 p.m.

Judge Dressel refused to disqualify himself or disclose the reasons for the reassignment to Judge Newton of the claims against the State. The petitioners then filed this original proceeding.

---

**2.** Neither the State nor Brougham has filed pleadings or briefs in this original proceeding.

**3.** In his orders of July 18, 1984, the respondent judge issued the following rulings which we summarize: (1) The plaintiffs' request made during the summary judgment arguments for leave of court to add the "reorganized Farmers Irrigation Ditch and Reservoir Company" as a defendant was denied because the United States District Court assumed jurisdiction of the assets in question. Therefore, the claimants must pursue their claims against the reorganized company in the federal court. (2) Under section 37–87–104(3), 15 C.R.S. (1984 Supp.), Estes Park, because it is a public entity as defined in the Colorado Governmental Immunity Act, cannot be sued under the strict liability provision of section 37–87–104 as the "owner of a reservoir." (3) As a matter of law, Estes Park owed no duty to the plaintiffs to build its reservoir facility to hold waters that might escape from an upstream facility, or to inspect, maintain, or take any other action concerning the upstream facility. Therefore, the plaintiffs' complaint that Estes Park was negligent in preparing for the

eventuality of waters escaping from Lawn Lake Dam failed to state a claim for relief. (4) Section 37–87–104(1) imposes "strict liability" rather than "absolute liability" on the owners of a reservoir which causes damage from waters escaping due to leakage, overflow, or breakage. A dam owner subject to strict liability is prima facie liable if water escapes, but has the right to raise certain defenses, such as, act of God, act of public enemy, or failure of a third party not under the owner's control to act. (5) Section 37–87–104(2), which exempts from liability the employees, shareholders, officers, or members of the board of directors of an owner of a reservoir, if a valid liability insurance policy for the statutory limits has been purchased by the owner of the reservoir and is in effect at the time such damage occurs, is constitutional. Therefore, the plaintiffs do not have a claim for relief against the officers, directors, employees, and shareholders of the Farmers Irrigating Ditch and Reservoir Company for negligence or strict liability.

## II.

▮ Relief in the nature of prohibition is a proper remedy only in those cases where the district court is proceeding without or in excess of its jurisdiction or has abused its discretion in exercising its duties. *City of Colorado Springs v. District Court,* 184 Colo. 177, 519 P.2d 325 (1974). The scope of inquiry under C.A.R. 21(a) is, therefore, limited to examining the jurisdictional grounds upon which the district court acted to determine whether or not the district court exceeded its jurisdiction or abused its discretion. *Id.*

▮ Judge Dressel was assigned to hear these consolidated actions by the April 15, 1983, order from then Chief Justice Hodges. The order states:

The Chief Justice has received the "Order Pursuant to C.R.C.P. 42.1" entered by the Panel on Multi-District Litigation on March 25, 1983, which apparently is a certification order entered pursuant to C.R.C.P. 42.1(h). More than 20 days have passed since entry of the panel's order and no original proceedings have been commenced in the Supreme Court and no show cause order has been issued by the Supreme Court.

Therefore, pursuant to C.R.C.P. 42.1(i), the Honorable William F. Dressel, Judge of the Eighth Judicial District, is assigned to hear the actions consolidated by the Panel on Multi-District Litigation.

*Beckord v. Farmers Irrigating Ditch & Reservoir Co.,* No. 83–MDL–2 (Colo. April 15, 1983).[4]

Rule 42.1 provides that "[w]hen actions involving a common question of law or fact are pending in different judicial districts, such actions may be transferred to any judge for hearing or trial of any or all of the matters in issue in any action." C.R. C.P. 42.1(b). Transfer is appropriate if "one judge hearing all of the actions will promote the ends of justice and the just and efficient conduct of such actions." *See* C.R.C.P. 42.1(g) (factors relevant to transfer). Under Rule 42.1, the Panel on Consolidated Multidistrict Litigation (Panel) is authorized to consider whether civil actions should be transferred. If appropriate, the Panel certifies the cases to the chief justice with its recommendation of a particular judge to hear the consolidated actions. C.R.C.P. 42.1(h). The actual transfer and consolidation is accomplished by an order from the chief justice assigning the actions to a judge. C.R.C.P. 42.1(i), (k)(1).

· Notwithstanding the express assignment by the chief justice, the respondent and counsel for the defendants who filed a brief in this original proceeding argue that Judge Dressel acted within his discretion in transferring the motions filed by the State to Judge Newton. We do not agree.

Nowhere does Rule 42.1 expressly grant the transferee judge assigned to hear "all of the actions" the authority to transfer any of the actions or individual issues relating to separate parties to another judge. *See* C.R.C.P. 42.1 (procedure after transfer). Nor can the rule be read to imply such an unbridled grant of authority. C.R. C.P. 42.1 delegates to the Panel the power to assess the merits of transfer and consolidation of any or all of the matters at issue in any action. Authority to transfer the actions is vested in the chief justice. This reading of the rule is consistent with the supervisory powers granted to this court by article VI, section 2(1) of the Colorado Constitution.[5] *See also Southeastern Col-*

---

4. C.R.C.P. 42.1, which became effective on July 1, 1981, was promulgated pursuant to article VI, section 21 of the Colorado Constitution:

The supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases, except that the general assembly shall have the power to provide simplified procedures in county courts for claims not exceeding five hundred dollars and for the trial of misdemeanors.

See, e.g., *J.T. v. O'Rourke,* 651 P.2d 407 (Colo. 1982); *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). None of the parties in this proceeding challenge this court's authority to promulgate C.R.C.P. 42.1, or question the validity of the order assigning the cases to Judge Dressel.

5. Colo. Const. art. VI, § 2(1):

The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general super-

*orado Water Conservancy District v. Huston,* 197 Colo. 365, 593 P.2d 1347 (1979), *cert. denied,* —— U.S. ——, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984) (by virtue of its constitutional supervisory powers but before the adoption of C.R.C.P. 42.1, this court ordered consolidation of more than 100 water cases filed in several water courts and stated that the consolidation before one judge was necessary to insure the harmonious workings of the judicial system).

Therefore, we hold that Judge Dressel's transfer of the issues pertaining to the State was in excess of his authority and contrary to the multi-district consolidation order entered by the chief justice.

### III.

The plaintiffs contend that Judge Dressel effectively disqualified himself in June of 1984 from hearing any of the actions. Based on the documents before us, we reach the same conclusion.

C.R.C.P. 97, which governs disqualification, provides:

A judge shall be disqualified in an action in which he is interested or prejudiced, or has been of counsel for any party, or is or has been a material witness, or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.... Upon disqualifying himself, a judge shall notify forthwith the chief judge of the district who shall assign another judge in the district to hear the action.

Although the petitioners filed a motion to disqualify Judge Dressel on July 18, 1984,

the motion was not supported by an affidavit as required by C.R.C.P. 97 and *Kubat v. Kubat,* 124 Colo. 491, 238 P.2d 897 (1951).[6] Nevertheless, the facts recited in Dubofsky's affidavit filed on August 1, 1984, in this court are useful in evaluating Judge Dressel's decision to withdraw from only the issues relating to the State. *Johnson v. District Court,* 674 P.2d 952 (Colo.1984).

■ The power of a judge to disqualify himself may be exercised even though the proper procedural steps leading to disqualification have not been pursued by any party to the litigation. *See, e.g., Aaberg v. District Court,* 136 Colo. 525, 319 P.2d 491 (1957); *Nelson v. Fitzgerald,* 403 P.2d 677 (Alaska 1965) (the necessity on the part of the parties to file an affidavit of prejudice is obviated by the judge's certificate of disqualification); *Gilmer v. Shell Oil Co.,* 324 So.2d 171 (Fla.Dist.Ct.App.1975) (although judge, who by her own motion entered an order of recusal, may have disqualified herself for reasons insufficient to disqualify under the applicable statute, she was precluded from proceeding further in the case); *State ex rel. Mosshammer v. Allen Superior Court,* 246 Ind. 366, 206 N.E.2d 139 (1965) (judge may disqualify himself even though a proper affidavit or motion asking for a change in judge is not filed). C.R.C.P. 97 expressly allows a judge to disqualify himself on his own motion, and the Colorado Code of Judicial Conduct provides that a judge should disqualify himself under certain circumstances. C.J.C. Canon 3(C)(1). Neither the rule nor the canon requires a formal order from the judge recusing himself. In *Aaberg,* we held that a judge may elect to step aside sua sponte and suggested that it was not reversible error for a judge who chooses this course not to make specific findings on the record justifying the change of judge. *See also Doe v. State,* 91 N.M. 51, 570 P.2d

intending control over all inferior courts, under such regulations and limitations as may be prescribed by law.

**6.** Under our analysis and resolution of this original proceeding, we need not reach the question

of the timeliness of the motion which was filed at 4:45 p.m. on July 18, 1984, the same day that Judge Dressel's rulings were issued.

589 (1977) (judge can voluntarily withdraw from a proceeding without filing an affidavit or order stating the reasons for his recusal).

■ In this case, Judge Dressel reassigned part of the consolidated actions to another judge.[7] He announced his decision to transfer certain issues in telephone conversations with Brougham and Dubofsky. French, the court-designated lead counsel for the claimants, and Brandes, lead counsel for the defendants, were not parties to these conversations.[8] Dubofsky's affidavit and Judge Dressel's response to the rule to show cause both indicate that "appearances of impropriety" were mentioned. Judge Dressel's response suggests that he was troubled by the fact that he had engaged in informal social conversations about the possibility of a future professional relationship with a member of the law firm representing the State in the event the judge elected to leave the bench. Judge Dressel's decision to withdraw from the issues relating to the State is consistent with avoiding any appearance of impropriety. While we decline to decide the question of whether Judge Dressel's concern constituted a bona fide conflict warranting or requiring disqualification, we hold that the judge effectively disqualified himself by communicating his concerns over a potential appearance of impropriety to Dubofsky and Brougham and thereafter transferring the State's motions to another judge.

Moreover, Judge Dressel erred in transferring only those parts of the actions which he perceived would be improper for him to hear. Since the chief justice had ordered him to hear the consolidated actions pursuant to C.R.C.P. 42.1, Judge Dressel could not recuse himself from only a part of the multi-district litigation. *See also Chalpin v. Mobile Gardens, Inc.,* 18 Ariz.App. 231, 501 P.2d 407 (1972) (when a judge has been properly disqualified he may not retain jurisdiction over any portion of the litigation); *State ex rel. Stefonick v. District Court,* 117 Mont. 86, 157 P.2d 96 (1945) (judges cannot be disqualified from portions of an action so as to parcel out the jurisdiction concurrently among two or more judges); *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39 (1978) (disqualified judge cannot hear any part of the proceedings). Therefore, Judge Dressel's recusal in June under circumstances that indicate his concern over the possibility of an appearance of impropriety effectively disqualified him from hearing or deciding any issue in any of the cases.

### IV.

■ Having held that Judge Dressel effectively disqualified himself in June, we now address the validity of the orders he issued on July 18, 1984.

In *People v. District Court,* 192 Colo. 503, 560 P.2d 828 (1977), the People sought to disqualify the respondent district court judge in two companion criminal cases. The judge denied the motion to disqualify and proceeded to hear and grant a motion to dismiss one of the two cases. We held that the respondent judge erred in not granting the recusal motion and vacated his order of dismissal. "Had he [granted

7. As we discussed in section II of this opinion, Judge Dressel was without authority under C.R.C.P. 42.1 to reassign the claims against the State. His attempt to reassign the matters also does not comport with the disqualification procedures outlined in C.R.C.P. 97. *Aaberg,* 136 Colo. at 528, 319 P.2d at 493. It would be incongruous to permit a disqualified judge to pick his or her successor to decide the case.

8. Although we do not conclude that Judge Dressel's decision to initiate communications with some of the attorneys amounts to judicial misconduct warranting his involuntary disqualification from these cases, we question the prudence of the judge's actions, particularly in view of the fact that he designated lead counsel in the litigation. *See* C.J.C. Canon 3(A)(4) ("A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding."); *State v. Valencia,* 124 Ariz. 139, 602 P.2d 807 (1979) (judge should have disqualified himself from sentencing hearing after his *ex parte* communication with the homicide victim's brother created an appearance of impropriety).

the motion] ... he would have been immediately deprived of *jurisdiction* to act further in either case. It follows that the respondent judge had no jurisdiction to decide the defendants' motion to dismiss ... and we have no jurisdiction to consider whether or not he was correct in dismissing that case." 192 Colo. at 510, 560 P.2d at 833 (emphasis in original) (citations omitted). *See also Johnson v. District Court,* 674 P.2d 952 (Colo.1984) ("It would be incongruous to permit a disqualified judge to rule on a discretionary motion, such as a request for a change of venue, which affects the substantial rights of the parties.").

We hold that after Judge Dressel disqualified himself he was without jurisdiction to rule on the motions filed by the defendants because these matters involved an exercise of judicial discretion. Therefore, his orders dated July 18, 1984, are void. This holding is consistent with *People v. District Court,* 192 Colo. 503, 560 P.2d 828 (1977); *Johnson v. District Court,* 674 P.2d 952 (Colo.1984); and the majority of jurisdictions which have addressed the issue. *See Hordyk v. Farley,* 94 Ariz. 189, 382 P.2d 668 (1963); *Gubler v. Commission on Judicial Performance,* 37 Cal.3d 27, 207 Cal.Rptr. 171, 688 P.2d 551 (1984); *Rogers v. State,* 341 So.2d 196 (Fla. Dist.Ct.App.1976), *cert. denied,* 348 So.2d 953 (1977); *Pueblo of Laguna v. Cillessen & Son, Inc.,* 101 N.M. 341, 682 P.2d 197 (1984); *State v. Nossaman,* 63 Or.App. 789, 666 P.2d 1351 (1983); *Chilicote Land Co. v. Houston Citizens Bank & Trust Co.,* 525 S.W.2d 941 (Tex.Civ.App.1975); *accord Gieffels v. State,* 552 P.2d 661 (Alaska 1976); *People ex rel. Walker v. Pate,* 53 Ill.2d 485, 292 N.E.2d 387 (1973).

Accordingly, the orders issued in Case No. 83–MDL–2 and dated July 18, 1984, must be vacated.[9] We neither express nor imply any opinion regarding the merits of

the defendants' motions upon which Judge Dressel ruled. The motions shall be decided by the judge designated by the chief justice to hear these consolidated cases.

The rule is made absolute.

DUBOFSKY, J., does not participate.

---

**9.** Although we recognize that the effect of our holding today appears to give the petitioners "two bites at the apple," we conclude that Judge Dressel's voluntary withdrawal from part of the actions because he perceived a potential ethical problem voided his subsequent rulings on the merits. In addition, the successor judge would necessarily be required to consider the merits of the motions because the petitioners have indicated they intend to file motions for a new trial directed to the rulings entered by Judge Dressel on July 18, 1984.