23CA1178 Marriage of Skellchock 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1178
Larimer County District Court No. 18DR30326
Honorable Kandace B. Majoros, Magistrate
Honorable Susan Blanco, Judge

In re the Marriage of

Derek Skellchock,

Appellant,

and

Alora-Ann Paige Volz,

Appellee.

ORDERS AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Harwich Brickley, LLC, Kara M. Harwich, Fort Collins, Colorado, for Appellant

No Appearance for Appellee

¶ 1    In this post-decree dissolution of marriage case between Derek Skellchock (father) and Alora-Ann Paige Volz (mother), father appeals the district court's order adopting a magistrate's ruling that imposed remedial and punitive contempt sanctions against him. He also contends that Eighth Judicial District Court Chief Judge Susan Blanco lacked jurisdiction over the case following her January 2020 recusal and that the orders she issued after that date must be vacated. We affirm.

## I.    Relevant Facts and Procedural History

¶ 2    During the dissolution of marriage proceedings, father asked Judge Blanco to recuse because she was presiding over a criminal case involving the parties. In a January 2020 order, Judge Blanco granted his request, and the case was reassigned to another district court judge.

¶ 3    About a year later, the court dissolved the marriage and entered permanent orders. The court ordered father to pay mother $111 per month in child support. In determining this obligation, the court accepted the parties' stipulation that father's gross monthly income was $3,304, which represented his veteran's disability benefits. The court adopted the parties' stipulation

1

concerning parenting time in an amended joint trial management certificate (amended JTMC) that allowed mother to exercise parenting time on Thanksgiving in even numbered years.

¶ 4 Father appealed the permanent orders, challenging, among other issues, the court's child support determination. In particular, he argued that his veteran's disability benefits could not be included in his gross income. A division of this court affirmed. *In re Marriage of Skellchock*, (Colo. App. No. 21CA0503, Feb. 24, 2022) (not published pursuant to C.A.R. 35(e)) (*Skellchock I*).

¶ 5 Father then asked the court to modify child support, again arguing that his veteran's disability benefits must be excluded from his gross income. The magistrate rejected father's argument and found that his gross income from those benefits was $3,306 per month. The magistrate also determined that, due to changes in mother's financial circumstances, father's child support obligation would increase to $200 per month.

¶ 6 Father filed a petition for review of that order, and, when the petition was ripe, he filed a motion asking the "Chief Judge" to review the order or appoint another judge to do so. Judge Blanco, who had been appointed the chief judge, ruled on the petition and

adopted the magistrate's order. Father appealed, and a division of this court affirmed. *In re Marriage of Skellchock*, (Colo. App. Nos. 22CA0249 & 22CA0250, Oct. 13, 2022) (not published pursuant to C.A.R. 35(e)) (*Skellchock II*).

¶ 7 Mother later filed two contempt motions against father. In the first, she accused father of not paying child support, and she requested remedial and punitive sanctions. In the second, she alleged that father did not allow her to exercise parenting time with the child on Thanksgiving in 2022, and she requested punitive sanctions.

¶ 8 After a hearing, the magistrate granted both motions and found father guilty of contempt. Regarding father's violation of the child support order, the magistrate imposed remedial sanctions requiring him to pay $7,735 in arrearages in installments of $100 per month and imposed a punitive sanction requiring him to serve three days in jail.[1] For father's violation of the parenting time order,

---

[1] The magistrate advised mother that if father failed to comply with the remedial sanctions, she could immediately file an affidavit of noncompliance and notice to set a hearing for a further sentence. Mother later did so. The magistrate stayed the imposition of any further sentence until resolution of this appeal. We express no opinion concerning the propriety of the additional proceedings.

the magistrate directed father to pay a $100 fine as a punitive sanction.

¶ 9    Father filed a petition for review with the district court and asked the court to stay the enforcement of the contempt sanctions. Father also filed a motion for Judge Blanco's recusal and a change of venue. He argued that, as a consequence of the 2020 recusal order, Judge Blanco lacked jurisdiction over the case and that any orders she issued after January 2020 were void. Judge Blanco denied the motion to recuse and change venue, directed the magistrate to rule on the motion to stay, and adopted the magistrate's contempt rulings.

## II.    Judge Blanco's Authority

¶ 10    Father contends that all orders Judge Blanco issued after January 2020 were void because she lost "jurisdiction" to enter the orders following her 2020 recusal. We disagree.

¶ 11    We review de novo a court's jurisdiction. *See In re Marriage of Roth*, 2017 COA 45, ¶ 13. An order entered without jurisdiction is void and may be challenged on that basis at any time. *In re Marriage of Mallon*, 956 P.2d 642, 645 (Colo. App. 1998).

4

¶ 12    In *Beckord v. District Court,* 698 P.2d 1323, 1330 (Colo. 1985), the supreme court said that once a judge recuses from a case, that judge loses "jurisdiction" to rule on further motions in that case. However, there can be "a blurring of the distinction between the appropriate exercise of power and the absence of power" when referring to a court's jurisdiction. *Minto v. Lambert,* 870 P.2d 572, 575 (Colo. App. 1993). "Jurisdiction" concerns the court's authority to render judgment within the types of cases "that the court has been empowered to entertain by the sovereign from which the court derives its authority.'" *People in Interest of J.W. v. C.O.,* 2017 CO 105, ¶ 24 (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo. 1986)). It is not a court's "authority to enter a particular judgment [or ruling] within that class" of cases. *Id.*

¶ 13    The Colorado Constitution vests district courts with general subject matter jurisdiction over dissolution of marriage proceedings. *In re Marriage of Thorburn,* 2022 COA 80, ¶¶ 15-16. Thus, while *Beckord* referred to a judge's loss of "jurisdiction" following a recusal, a close reading of that case (and others since) reveals that the recusal does not create a true jurisdictional defect. *See*

*Beckord*, 698 P.2d at 1330 (holding that a judge's recusal only precludes that judge from entering orders involving "an exercise of judicial discretion"); *Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 638 (Colo. 1987) (recognizing a chief judge's reassignment of a case to a judge who had previously recused); *see also El Fenix de Puerto Rico v. M/Y JOHANNY*, 36 F.3d 136, 142 (1st Cir. 1994) (acknowledging that a recused judge may still enable "administrative" reassignment). The judge, instead, loses the "authority" to issue discretionary rulings. *Johnson v. Dist. Ct.*, 674 P.2d 952, 957 (Colo. 1984); *cf. People v. Babcock*, 2023 COA 49, ¶¶ 8-11 (discussing the difference between a court's jurisdiction and its authority), *aff'd*, 2025 CO 26.

¶ 14      A party can waive a claim that the judge acted without authority. *See People v. Garcia*, 2024 CO 41M, ¶¶ 45-46, 53 (*Garcia I*); *Aaberg v. Dist. Ct.*, 319 P.2d 491, 493-94 (Colo. 1957); *see also People v. Garcia*, 2024 COA 91, ¶¶ 4-7 (*Garcia II*); *In re Marriage of Fifield*, 776 P.2d 1167, 1168 (Colo. App. 1989). And "[t]he law is well settled" that when a party asks "the court for affirmative relief," they may not simultaneously "question the [court's] authority" to act. *Aaberg*, 319 P.2d at 493. Thus, when a party knows of

6

grounds for a judge's disqualification or lack of authority but fails to timely assert those grounds as an issue, the party waives their right to object to the judge's actions. *See Garcia I*, ¶ 46; *Aaberg*, 319 P.2d at 494; *Garcia II*, ¶¶ 4-7; *Fifield*, 776 P.2d at 1168.

¶ 15 Two years after Judge Blanco's recusal, father filed a motion asking the "Chief Judge" to rule on his pending motions, noting that he had contacted the chief judge's clerk "numerous times." In February 2022, Judge Blanco was the chief judge, and, following father's request, she began to rule on his outstanding motions. In June 2023, father argued, for the first time, that Judge Blanco could not preside over the case.

¶ 16 But father cannot now contest Judge Blanco's authority. He specifically asked her to rule on his pleadings, and he raised no objection to her multiple orders for over a year and a half. Father thus waived his current objection to Judge Blanco's authority to issue orders after her 2020 recusal. *See Garcia I*, ¶ 46; *Aaberg*, 319 P.2d at 493-94; *see also Garcia II*, ¶¶ 4-7; *Fifield*, 776 P.2d at 1168.

¶ 17 To the extent father also suggests that Judge Blanco abused her discretion by denying his June 2023 motion to recuse, we are unpersuaded. *See Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA

148, ¶ 17 (reviewing a judge's recusal ruling for an abuse of discretion). Judge Blanco explained that her 2020 recusal was based on the parties' pending criminal case and done in an abundance of caution. However, she determined that those concerns never came to fruition and that there were no longer any valid reasons for her to recuse. She explained that the criminal case was dismissed without a trial and that she received no information from that case that biased her against either party. *See People in Interest of S.G.*, 91 P.3d 443, 447-48 (Colo. App. 2004) (noting that a judge's prior involvement in a case between the parties does not automatically require recusal). Because father develops no meaningful argument to challenge her determination, we will not further address it. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (declining to address undeveloped argument).

¶ 18 We therefore reject father's claim that Judge Blanco lacked jurisdiction to issue orders after January 2020.

### III. The Contempt Rulings

¶ 19 Father also contends that the district court erred by adopting the magistrate's ruling finding him in contempt and imposing remedial and punitive contempt sanctions. We disagree.

## A.    Standard of Review

¶ 20    Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We review the conclusions of law de novo but defer to the magistrate's factual findings unless they are clearly erroneous.  *Id.*

## B.    Due Process

¶ 21    Father contends that the magistrate violated his due process rights when the magistrate solicited testimony from mother at the hearing and allegedly acted as a surrogate attorney to prosecute mother's allegations of contempt.  We disagree.

¶ 22    Due process entitles a party to a fair trial in a fair tribunal.  *City of Manassa v. Ruff*, 235 P.3d 1051, 1057 (Colo. 2010).  The court therefore must exercise restraint over its conduct and statements to maintain an impartial forum and ensure that it does not become an advocate.  *See People v. Coria*, 937 P.2d 386, 391 (Colo. 1997); *People v. Adler*, 629 P.2d 569, 573 (Colo. 1981).  However, the "court has the prerogative and, at times, the duty to question witnesses."  *People v. Rodriguez*, 209 P.3d 1151, 1162 (Colo. App. 2008), *aff'd*, 238 P.3d 1283 (Colo. 2010); *see also* CRE

614(b).  Indeed, "[i]t is sometimes the court's duty to question witnesses to develop the truth more fully and to clarify testimony." *Eggert v. Mosler Safe Co.*, 730 P.2d 895, 897 (Colo. App. 1986); *see also People v. Hall*, 2021 CO 71M, ¶ 22 ("[A] trial court . . . has the duty to ensure that the facts are not obscured and to illuminate confusing issues.").

¶ 23    A court's comments or questions only infringed on a party's due process rights if the court "so departed from the required impartiality as to deny the [party] a fair trial."  *Rodriguez*, 209 P.3d at 1162.

¶ 24    At the hearing, mother, who appeared without an attorney, began by testifying that father had not made any "payments" to her. The magistrate asked mother to clarify "what payments" she was referencing, explaining that she should approach the hearing "as if [the magistrate] kn[e]w nothing."  Mother clarified that father was not paying child support.  Mother then sought to admit a screen shot of the Family Support Registry account summary, which showed that father had not paid his child support obligation. Father objected, and the magistrate asked mother some foundational questions about the exhibit.  Mother responded that

she had obtained the document a week before the hearing, it was a true and accurate copy, and it had not been altered. The magistrate then admitted the exhibit.

¶ 25 Father argues that, through this inquiry, the magistrate improperly stepped into the role of advocate and facilitated the admission of evidence concerning father's contemptuous conduct. However, the magistrate's questions merely sought to clarify the evidence and bring out facts important to a just determination of the matter. *See Hall*, ¶ 22; *Eggert*, 730 P.2d at 897. Moreover, the magistrate's inquiry was brief and limited in scope.

¶ 26 We therefore see no indication in the record that the magistrate improperly acted as both prosecutor and judge, and we are not persuaded otherwise by father's reliance on *Harthun v. District Court*, 495 P.2d 539 (Colo. 1972), or *Groves v. District Court*, 806 P.2d 947 (Colo. 1991). Those cases are distinguishable. In *Harthun*, the judge actively prosecuted the contempt allegations, including engaging in direct- and cross-examination of witnesses. *Harthun*, 495 P.2d at 541-42. *Groves* merely reiterated *Harthun*'s determination that "it was inappropriate for the judge to be both the finder of fact and the prosecutor." 806 P.2d at 948.

¶ 27    The district court thus correctly rejected father's argument that the magistrate improperly acted as a surrogate attorney and prosecuted mother's contempt motions.

### C.    Sufficiency of Evidence

¶ 28    Father next contends that the court erred by adopting the magistrate's contempt rulings because mother did not present sufficient evidence to support the magistrate's determinations of contempt and imposition of sanctions.  We are unpersuaded.

### 1.    Applicable Law

¶ 29    A court may hold a party in contempt upon a finding that the party did not comply with a lawful court order of which the party was aware.  *See* C.R.C.P. 107(a)(1); *Sheehan*, ¶ 24.  The court may then impose remedial or punitive sanctions.  *See* C.R.C.P. 107(d)(1)-(2).

¶ 30    Remedial sanctions "force compliance with a lawful order or . . . compel performance of an act within the person's power or present ability to perform."  C.R.C.P. 107(a)(5).  To impose such sanctions, the court must find that the contemnor has the present ability to comply with the order and the present ability to purge the contempt.  *See* C.R.C.P. 107(d)(2); *Sheehan*, ¶¶ 24, 26-27.

12

¶ 31    Punitive sanctions punish a party for "conduct that is found to be offensive to the authority and dignity of the court."  C.R.C.P. 107(a)(4).  Punitive sanctions require the court to find that the contemnor had the ability to comply with the order and willfully refused to do so.  *Sheehan*, ¶ 25.

¶ 32    A determination of whether a party is in contempt lies within the court's sound discretion, and we will uphold its decision absent a showing that the court acted in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplied the law.  *Id.* at ¶ 23.

## 2.    Unpaid Child Support

¶ 33    Father argues that the magistrate erred by not dismissing mother's contempt motion based on his purported failure to pay child support.  But the record supports the magistrate's findings for contempt, and we therefore will not disturb her determination.  *See Aspen Springs Metro. Dist. v. Keno*, 2015 COA 97, ¶ 27.

¶ 34    Father claims that mother did not establish the existence of a lawful court order.  He argues that her contempt motion only referenced orders from January 23, 2021, and January 23, 2022, which he asserts do not exist.  While that may be true, mother

13

attached to her contempt motion the January 3, 2022, order, which was the child support order in effect at that time. *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (recognizing that a court may take judicial notice of its case file). In a prehearing order, the magistrate also found that, by attaching the January 3, 2022, order to her motion, mother clarified "the actual order [father] allegedly violated." Moreover, at the hearing, mother testified about father's current and past court-ordered child support obligations, and she offered the January 3, 2022, order as an exhibit, which the magistrate admitted without objection.

¶ 35    That exhibit showed that (1) father's current obligation was $200 per month and (2) the permanent orders previously required him to pay $111 per month. Mother thus sufficiently established the existence of a court order requiring father to pay child support. *See Aspen Springs*, ¶ 27; *see also Thorburn*, ¶ 49 (recognizing that credibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from that evidence, are issues within the sole discretion of the district court).

14

¶ 36    We also reject father's suggestion that mother failed to prove he knew of the court's order.  *See Aspen Springs*, ¶ 27; *see also Thorburn*, ¶ 49.  Mother testified that father's multiple appeals (*Skellchock I* and *Skellchock II*), in which he challenged the court's child support orders, showed that he was aware of his child support obligation.  She also said that father "studies the court orders."

¶ 37    Father next claims that mother did not prove that he violated the court's child support order.  But she testified that father "never made a single payment," which she clarified meant payment of child support.  And the magistrate admitted her exhibit of the Family Support Registry account summary, which showed that father had over $9,000 in arrearages.  This evidence sufficiently established that father had not complied with the child support order.  *See Aspen Springs*, ¶ 27; *see also Thorburn*, ¶ 49.

¶ 38    Still, father argues that mother did not prove that he had the present ability to comply with the court's order.  For remedial sanctions, the magistrate must find that father had the present ability to pay child support.  *See* C.R.C.P. 107(d)(2); *Sheehan*, ¶¶ 24, 26-27.  But mother did not bear the burden to prove father's present ability to comply.  She only needed to establish that father

violated the underlying court order and that he was aware of that order. *See Sheehan,* ¶ 24. Mother met that burden. The burden then shifted to father to prove a present inability to pay. *See id.*; *see also In re Marriage of Lamutt,* 881 P.2d 445, 447 (Colo. App. 1994) ("The rationale for imposing the burden upon the alleged contemnor is that the evidence relative to that person's ability to pay is more readily available to the alleged contemnor than it is to the movant; the trial court in earlier proceedings has already heard evidence and in entering its order has determined the alleged contemnor's ability or inability to pay; and the movant has established a prima facie case by proving entry of the decree and default on the part of the alleged contemnor to pay the amount or amounts therein."). The magistrate found that father's claim of an inability to pay was not credible, and we must defer to that finding. *See Aspen Springs,* ¶ 27; *see also Thorburn,* ¶ 49.

¶ 39　　For punitive sanctions, even though the burden of proving the claim rested solely on mother, those sanctions did not require a finding that father had the present ability to comply. *See Sheehan,* ¶¶ 25-26, 41. Rather, mother had to show that, at some point, father had the ability to comply but refused to do so. *Id.*; *see also*

*In re Marriage of Nussbeck*, 974 P.2d 493, 498 (Colo. 1999) (Punitive sanctions punish a contemnor for "failing to pay amounts due at a time when the contemnor had the ability to pay."). The record supports the finding that she met that burden. *See Aspen Springs,* ¶ 27; *see also Thorburn,* ¶ 49.

¶ 40 Mother testified that father had continuously received veteran's disability benefits after the dissolution but that he refused to use those benefits to pay his support obligation. She also presented evidence that, during that time, father received over $3,000 per month from these benefits. Moreover, the record reveals that father steadfastly asserted that the court could not require him to use his veteran's disability benefits to pay child support despite repeated court rulings holding that such benefits may be used to satisfy child support obligations. *See Harriman,* ¶ 64; *see also Skellchock I,* No. 21CA0503, slip op. at ¶¶ 42-43; *Skellchock II,* Nos. 24CA0249 & 24CA0250, slip op. at ¶¶ 37-40.

¶ 41 The district court therefore did not err by adopting the magistrate's ruling finding father in contempt and imposing remedial and punitive sanctions for his failure to pay child support.

17

### 3. Thanksgiving Parenting Time

¶ 42 Father next argues that mother did not present sufficient evidence to establish that he willfully violated a court order regarding mother's Thanksgiving parenting time. We disagree.

¶ 43 Mother testified that she was entitled to parenting time on Thanksgiving in 2022. She explained that, when she tried to pick up the child from father, he told her that he "got [his] holidays . . . wrong" and they were "out of town with family." She further testified that father refused to return the child to her on Thanksgiving, even though they were "less than five minutes" from her home, and that he "intentionally" interfered with her holiday parenting time because he disliked her family.

¶ 44 This testimony and the admitted exhibits memorializing mother's conversations with father, which the magistrate credited, sufficiently supported the magistrate's finding that father willfully refused to comply with the court-ordered parenting plan. *See Aspen Springs*, ¶ 27; *see also Thorburn*, ¶ 49.

¶ 45 Father argues, however, that mother did not establish the existence of a valid court order because the magistrate did not admit into evidence an order concerning Thanksgiving parenting

time. Even so, the court's permanent orders, which adopted the parties' stipulation on holiday parenting time, established that mother received parenting time on Thanksgiving in even numbered years. That stipulation was set forth in the amended JTMC, and, during the contempt hearing, mother repeatedly referenced the amended JTMC and testified that she was entitled to parenting time on Thanksgiving in 2022. In addition, mother attached both the amended JTMC and the permanent orders to her contempt motion, which the record shows was hand delivered to father before the hearing. *See Harriman*, ¶ 64. Mother thus sufficiently established the existence of a valid court order concerning her Thanksgiving parenting time. *See Aspen Springs*, ¶ 27; *see also Thorburn*, ¶ 49.

¶ 46 The district court properly adopted the magistrate's determination to impose punitive contempt sanctions for father's parenting time violation.

### IV. Appellate Attorney Fees and Costs

¶ 47 Father asks us to award him attorney fees on appeal. But other than citing C.A.R. 38, he develops no legal argument to support his request. We therefore decline to award attorney fees. *See In re Marriage of Wright*, 2020 COA 11, ¶ 39 ("Citing [an]

appellate fee rule as the sole legal basis for an attorney fees request is not sufficient.").

¶ 48 He also seeks an award of appellate costs under C.A.R. 39. But because we are affirming the orders, he is not entitled to such costs. *See* C.A.R. 39(a)(2).

## V. Disposition

¶ 49 The orders are affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.