576 P.2d 182 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Jennerson COSTON, Defendant-Appellant.
No. 76-921.
Colorado Court of Appeals, Div. II.
November 10, 1977.
Rehearing Denied December 15, 1977.
Certiorari Granted March 13, 1978.
*184 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Felipe V. Ponce, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Murphy, Morris & Susemihl, David H. Morris, Colorado Springs, for defendant-appellant.
RULAND, Judge.
The defendant, Jennerson Coston, appeals his conviction by a jury of second degree murder. We affirm.
The record reflects the following sequence of events. On June 20, 1976, Ursula Freeman left a club where she was employed, accompanied by Wilburn King. King drove his car to a nearby restaurant and Freeman followed behind in her car. After parking his car in the restaurant parking lot, King got into Freeman's car, sat in the front passenger seat, and asked her what she wanted to eat. At that point Freeman was looking into the rear view mirror of the car and twice responded, "There he is". King turned to his left and observed the torso of a black man of medium build through the car windows. He looked forward, and then to his left as two shots were fired at Freeman, whereupon he exited the car to avoid being shot by the assailant. At no time was King able to see the assailant's face. He returned to the car where Freeman was slumped over, dead from a bullet wound in the head.
Immediately thereafter, and a short distance away, two witnesses saw three men, one of whom matched the general description given by King, running across the parking lot where the shooting occurred. Neither witness saw the suspect's face, but one testified that shortly thereafter she saw a black man drive past her after exiting the parking lot in a late model maroon-colored Pontiac or Buick car with a temporary license permit. The defendant was arrested about an hour later driving such a car, and, in an auto "line-up" held a few days later, the witness identified the defendant's car as being very similar to the car she had seen.
Other testimony given at trial established that the victim Freeman had attempted to end an affair of six years with the defendant a few days prior to the shooting, and that on several occasions thereafter the defendant was seen lurking around the club where Freeman worked. There was also evidence to show that Freeman and King had commenced an affair the week before the shooting, and that King had been given an angry stare by a man, later identified as the defendant, whom he encountered as he exited the club one evening. Finally, testimony was introduced seeking to establish that the defendant owned a gun (contrary to the statement he made to an officer), that at the time of the shooting, the defendant's car was one of only a few such maroon *185 late model Pontiacs in Colorado with a temporary license plate, and that all other such cars were not in the area where Freeman was shot on June 20.

I.
The defendant first contends that the trial court erred when it refused to suppress as evidence the identification of his car at the auto "line-up" as being similar to the car seen leaving the scene of the crime. We disagree with this contention.
An item of real evidence is admissible if it is in some way connected with either the perpetrator of a crime, the victim, or the crime itself, People v. Penno, 188 Colo. 307, 534 P.2d 795 (1975), and where, as here, a witness observes and subsequently describes an automobile for law enforcement officers, testimony as to the description and subsequent out-of-court identification may be introduced. See United States v. McKenzie, 414 F.2d 808 (3rd Cir. 1969), cert. denied sub nom., United States v. Anthony, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510. Further, factors surrounding the identification, such as the suggestiveness of the "line-up", affect only the weight to be given to the evidence, not its admissibility. See McKenzie, supra. And, contrary to the defendant's contention, the presence of counsel is required only in certain instances of pretrial confrontation of the accused with investigators or witnesses against him. See United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973); People v. Lowe, 184 Colo. 182, 519 P.2d 344 (1974). Thus, admission of the identification testimony was proper.

II.
The defendant next contends that the trial court erred when it refused to give his tendered instruction on manslaughter. We also disagree with this contention.
A defendant is entitled to have the jury instructed on his theory of the case if there is some evidence to support that theory. People v. White, Colo., 553 P.2d 68 (1976). However, to be entitled to a manslaughter instruction, there must be evidence tending to show, inter alia, that the assailant acted not after deliberation and in response to "a serious and highly provoking act of the intended victim," but if "between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder." Section 18-3-104(1)(c), C.R.S. 1973 (1976 Cum.Supp.). Here, no evidence was presented of any such provoking act sufficiently near in time to justify the giving of a manslaughter instruction. See People v. Mullins, 188 Colo. 23, 532 P.2d 733 (1975).

III.
The defendant next contends that three types of evidence were improperly admitted. We find no merit in any of these contentions.
Freeman's statement, "there he is," made just prior to the shooting was admissible as an excited utterance. While under the influence of a startling event, the statement of a deceased is considered sufficiently reliable to be admitted into evidence even though it is hearsay. See Industrial Commission v. Diveley, 88 Colo. 190, 294 P. 532 (1930); McCormick on Evidence § 297 (E. Cleary 2d ed. 1972).
A sales slip from a pawn shop, purportedly signed by the defendant and indicating that the defendant purchased a gun from the shop in 1966, was properly admitted even though the pawnbroker had no personal knowledge of the transaction. The record was made at the time of the sale, in the regular course of business, and as part of the records regularly kept in the course of the pawnbroker's business. Lack of personal knowledge by the witness affects only the weight to be given to this evidence. Crim.P. 26.2(b).
Finally, the trial court did not commit reversible error in admitting two letters from the defendant to Freeman, and four letters from Freeman to the defendant, postmarked from 1970 to 1973 in which Freeman and the defendant expressed their *186 love for each other. Assuming, arguendo, that the letters were not relevant to show defendant's state of mind at the time of the shooting, this evidence was merely cumulative of other evidence admitted to show the nature and length of the relationship between defendant and Freeman. See People v. O'Donnell, 184 Colo. 104, 518 P.2d 945 (1974).

IV.
We also find without merit defendant's assertion that the trial court improperly refused to allow an offer of proof regarding certain testimony which counsel wished to elicit from Wilburn King. The record discloses that the remarks of counsel were sufficient to inform the court of the nature of the proposed inquiry, and it is not contended here that this testimony was admissible.

V.
Finally, the defendant contends that the trial court erred when it denied his motion for a judgment of acquittal. However, when the evidence is viewed in a light most favorable to the verdict, reasonable men could conclude that the defendant was guilty beyond a reasonable doubt. People v. Martinez, Colo., 553 P.2d 774 (1976). Thus, the trial court's ruling was correct.
Judgment affirmed.
SMITH and BERMAN, JJ., concur.