**Jennerson COSTON, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. C–1485.**

Supreme Court of Colorado,
En Banc.

Aug. 10, 1981.

As Modified on Denial of Rehearing
Sept. 21, 1981.

Agee, Ewing & Goldstein, Peter A. Goldstein, Colorado Springs, for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Felipe V. Ponce, R. Michael Mullins, Asst. Attys. Gen., Denver, for respondent.

ROVIRA, Justice.

We granted certiorari from the Court of Appeals' decision in *People v. Coston*, 40 Colo.App. 205, 576 P.2d 182 (1978), to consider the claim made by the petitioner-defendant, Jennerson Coston, that the district court erred when it refused to give his tendered jury instruction on manslaughter at the trial in which he was charged with first-degree murder[1] and convicted of second-degree murder.[2] The Court of Appeals affirmed the trial court's ruling that there was no evidence to justify such an instruction, and we affirm the Court of Appeals.

I.

At trial the defendant was identified, primarily by circumstantial evidence, as the man who fired two shots at close range at the victim, Ursula Freeman, while she was sitting in the driver's seat of her parked automobile on the night of June 20, 1976. She died from a bullet wound in the head.[3]

The record reflects that Freeman had carried on an extramarital affair with defendant for over six years. About a week before she was killed, she had begun another affair with Wilburn King, whom she had met through her job as a barmaid-waitress at the Ent Air Force Base Officers' Club. At about 2:00 a. m. on the morning of June 19, approximately 43 hours before she was shot, the defendant telephoned her. In the course of a lengthy conversation, she reaffirmed her desire to "break off" their relationship. The defendant, at that time, said he wanted to be more to her than "just friends." Several days before the shooting, King testified that he was "intercepted" momentarily by the defendant who crossed his path at the Officers' Club. The defendant said nothing to King, but gave him a "piercing glare." The defendant took an interest in Freeman's comings and goings at the club and had watched her home at least once.

On June 20, 1976, King went to the Officers' Club and talked with Freeman. About 8:30 p. m. they left the Officers' Club in separate cars to get something to eat. When they arrived at the parking lot situated between two restaurants, King got out of his car and sat next to Freeman in hers. When he asked her what she wanted to eat, she was looking into her rear view mirror and replied, "There he is." When King asked her what she meant, she repeated, "There he is." The man she saw walked up to the vehicle, shot her, and ran away in one direction while King ran in the other.

After the defendant was arrested, he was asked if he had been jealous of the victim. He responded "only as much as two people who go together would be jealous of each other."

1. Section 18–3–102(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

2. Section 18–3–103(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

3. A somewhat fuller statement of the facts of this case, going beyond what is necessary in our present certiorari review, is available in *People v. Coston, supra.*

The defendant did not testify at trial, but offered testimony through other witnesses that at the time of the shooting he was at the Smugglers Bar. His defense was alibi.

In support of a tendered jury instruction on manslaughter, which was refused by the trial court,[4] the defendant relied on the evidence introduced by the People concerning his relationship with the victim. The jury was instructed on the primary charge of first-degree murder and on the lesser-included charge of second-degree murder. It returned a guilty verdict on the latter.

The Court of Appeals upheld the lower court ruling that there was no evidence to justify a manslaughter instruction. Specifically, it found that no facts appeared in the record which could show any provoking act by the victim which was "sufficiently near in time [to the shooting] to justify the giving of a manslaughter instruction." *People v. Coston, supra* at 208, 576 P.2d at 185.

## II.

▪ An instruction tendered by a defendant which permits the jury to find the defendant innocent of the principal charge and guilty of a lesser charge should be given if supported by some evidence. *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978). A court must ask, when determining if a defendant is entitled to such an instruction in a homicide case, whether there is "any evidence, however improbable, unreasonable or slight" which tends to reduce the homicide to a lesser grade. *People v. Watkins*, 196 Colo. 377, 379, 586 P.2d 43, 45 (1978); *English v. People*, 178 Colo. 325, 497 P.2d 691 (1972); *Read v. People*, 119 Colo. 506, 205 P.2d 233 (1949).

The defendant in this case requested that the jury be instructed on the offense of manslaughter, as it is defined in section 18–3–104(1)(c), C.R.S. 1973 (1978 Rep. Vol. 8):

"(1) A person commits the crime of manslaughter if:

. . . .

"(c) With intent to cause the death of a person other than himself, he causes the death of that person, or of another person, under circumstances where the act causing the death was performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person; but if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder."

▪ To be entitled to a manslaughter instruction, the defendant must be able to point to some evidence presented at trial which would permit a jury to find, in addition to concluding that the defendant intentionally killed the victim, that the following circumstances existed at the time the offense was committed: (1) the act causing the death was performed upon a "sudden heat of passion," (2) caused by a "serious and highly provoking act of the intended victim," (3) which was sufficient "to excite an irresistible passion in a reasonable person," and (4) between the provocation and the killing, an insufficient "interval" of time passed for "the voice of reason and humanity to be heard."

At trial, the defense's central theory was alibi—that the defendant was not present at the time Freeman was killed. The prosecution, in addition to countering this theory, offered testimony concerning the relationship between defendant and the victim in order to show that he rationally calculated, whether intentionally or knowingly, to shoot her. His resentment at the termination of their love affair was posited as a motive for this behavior.

The defendant argues that (1) evidence of his long-standing, though illicit, sexual relationship with the victim, (2) his jealousy over her, and (3) her attempt to terminate

---

4. The defendant's tendered jury instruction was based on the language of section 18–3–104(1)(c), C.R.S. 1973 (1978 Repl. Vol. 8) and on the pattern jury instruction in *Colo.J.I. (Crim.) 9:9*.

their relationship show, in combination, sufficient provocation to warrant a manslaughter instruction. We disagree.

No evidence of any kind was presented that the defendant shot the victim while in fact in the "sudden heat of passion." Even if one infers that defendant was to some degree provoked by Freeman's behavior in breaking off their relationship, there was no evidence presented that at the time of the shooting his action was "being directed by passion rather than reason." *R. Perkins, Criminal Law* at 66 (2d ed. 1969). Nothing indicates that he was in fact deprived of an ability to control his homicidal act. *See 1 F. Bailey and H. Rothblatt, Crimes of Violence* § 561; II *Wharton's Criminal Law* § 164 (14th ed. 1979).

In cases such as *Baker v. People*, 114 Colo. 50, 160 P.2d 983 (1945) and *Ferrin v. People*, 164 Colo. 130, 433 P.2d 108 (1967), there was some evidence presented at trial that the defendant's homicidal acts came as explosions of pent-up anger and emotion, built up by a series of provoking acts. *See Perkins, supra*, at 67 n. 8. These cases were decided before amendment of the manslaughter statute in 1975.[5] The legislature has now specified that a defendant's sudden passion must have been "caused by a serious and highly provoking act *of the intended victim*" before murder is mitigated to manslaughter. In the present case, no evidence tends to show that the defendant suffered any sudden, unanticipated loss of self-control in response to the victim's provocation. The victim's mere decision to terminate her relationship with the defendant in this case does not amount to the sort of serious and highly provoking act which is sufficient to excite an irresistible passion in a reasonable person.

The legislature has established the circumstantial elements which must be shown before a homicide is to be treated as manslaughter. Here Freeman had in fact done nothing to cause defendant to become suddenly and passionately enraged or aroused. *People v. Bastardo*, 191 Colo. 521, 554 P.2d 297 (1976). *See Hampton v. People*, 171 Colo. 153, 465 P.2d 394 (1970). *Cf. People v. Miller*, 187 Colo. 239, 529 P.2d 648 (1974).

Even if we assume *arguendo* that a jury might draw an inference that the defendant's passion had been irresistibly provoked by Freeman's desire to terminate their relationship, the defendant's argument still fails.

The question of whether there is sufficient evidence of a cooling off period between provocation and killing is initially one of law for the court. *English v. People, supra.* A victim's provocation need not occur immediately before the killing in order to mitigate the homicide to manslaughter. *See Ferrin v. People, supra.* But where the provocation by the victim is not immediate, circumstances must be in evidence which would permit an inference that the mental state of the killer rendered him incapable of regaining reasonable self-control during the extended period of time between the provocation and the killing. *Compare English v. People, supra, with Ferrin v. People, supra.* No precise formulation may be offered to define what "cooling time" constitutes a sufficient interval to allow a person to function rationally after having been seriously provoked. This judgment depends upon human nature as it is generally understood, the particular emotional state of the offender, and, especially, upon the surrounding circumstances of the case. *See Bailey and Rothblatt, supra,* § 566; *Perkins, supra,* at 68–69.

Here, neither the victim's relationship with the defendant, the defendant's mental state as it was put in evidence, nor the circumstances of the victim's death support a finding that, between the victim's last conversation with defendant and her subsequent killing, not enough time passed to allow the defendant's passions to cool. We, therefore, agree with the Court of Appeals that whatever provocation the victim offered the defendant was not sufficiently near in time to her killing to entitle the defendant to a manslaughter instruction.

---

5. Colo. Sess. Laws 1975, ch. 167, 18–3–104 at 618.

■ Under the evidence, there was no rational basis for a verdict convicting the defendant of the lesser offense of manslaughter. Thus, the trial court was not obliged to submit this lesser offense to the jury. *People v. Saars, supra; People v. Thompson*, 187 Colo. 252, 529 P.2d 1314 (1975).

We affirm the Court of Appeals and the judgment of conviction.

DUBOFSKY, J., does not participate.