**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Lawrence G. GARCIA,
Defendant–Appellant.**

**No. 88CA1405.**

Colorado Court of Appeals,
Div. I.

Aug. 30, 1990.

As Modified on Denial of Rehearing
Dec. 20, 1990.

Certiorari Granted April 22, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Douglas J. Friednash, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge SMITH.

Defendant, Lawrence C. Garcia, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree murder and a crime of violence. We reverse and remand for a new trial.

The evidence established that the victim was stabbed in the chest with a kitchen knife on the first floor of her home, and that, although she was able to walk upstairs, she died soon thereafter from loss of blood. Testimony from other witnesses indicated that defendant and the victim had been arguing before the stabbing occurred.

The defendant, in a videotaped interview, stated that the victim had been stabbed by an intruder. But, in a statement videotaped a week after the initial statement, he admitted that he stabbed the victim. However, he claimed that it occurred when he had attempted to stab himself during an argument with the victim, after she had accused him of infidelity, and that she had been stabbed accidentally when she interfered with his suicide attempt.

At trial, the theory of defense was predicated on the truth of the first videotape interview. However, defendant also requested an instruction on the lesser offense of heat of passion manslaughter, but the trial court refused to so instruct the jury.

During trial, the father of the victim was permitted to testify, over defendant's objection, as to hearsay statements made by the victim's 2–year old son. The first statement, "Daddy did it," was made two days after his mother's death, shortly after the boy had viewed his mother in her casket. The second statement, "Mama crying, Mama and Daddy fighting, Mama hurt," was made several days later, after the boy had seen a photograph of his mother. Although there was no direct evidence that the boy had witnessed the stabbing, the statements were admitted as excited utterances under CRE 803(2).

I.

On appeal, defendant first contends that the trial court erred in denying his request for an instruction on heat of passion manslaughter. We agree that such an instruction should have been given.

In a homicide case, an instruction on a lesser offense must be given if there is any evidence, no matter how improbable, unreasonable, or slight, to establish the lesser offense. *People v. Shaw*, 646 P.2d 375 (Colo.1982).

Heat of passion manslaughter is not a pure lesser included offense of either first degree murder or second degree murder because it includes an additional element, that the defendant was acting "upon a sudden heat of passion," which must be proven to the jury. *People v. Lewis*, 676 P.2d 682 (Colo.1984).

To be entitled to a heat of passion manslaughter instruction, the defendant must be able to point to some evidence, however slight, presented at trial which

would permit a jury to find, in addition to concluding that the defendant knowingly killed the victim, that certain additional circumstances existed at the time the offense was committed. These additional factors include that:

"(1) the act causing the death was performed upon a 'sudden heat of passion,' (2) caused by a 'serious and highly provoking act of the intended victim,' (3) which was sufficient 'to excite an irresistible passion in a reasonable person,' and (4) between the provocation and the killing, an insufficient 'interval' of time passed for 'the voice of reason and humanity to be heard.'"

*Coston v. People*, 633 P.2d 470 (Colo.1981). *See also* § 18–3–104, C.R.S. (1986 Repl.Vol. 8B).

██ Here, the prosecution introduced the testimony of the victim's sister and cousin, both of whom testified to having heard the victim and defendant speaking loudly and arguing, shortly before they heard the victim scream. The second videotaped statement of defendant was also introduced, in which defendant states that he and the victim were arguing as the victim had accused defendant of involvement with another woman. Defendant stated in that videotaped interview that the victim was stabbed during the course of that argument, albeit accidentally, and that he was emotionally distraught at the time.

Although a manslaughter instruction is inconsistent with both defendant's theory at trial that an intruder stabbed the victim, and the claim of accident during the second videotaped interview, there was sufficient evidence from which the jury could have found that defendant stabbed the victim during an argument after she had falsely accused him of involvement with another woman, sufficient to raise an irresistible passion in a reasonable person. Thus, the failure, when requested, to instruct on heat of passion manslaughter mandates a new trial. *See People v. Shaw, supra.*

## II.

An issue that may arise on retrial concerns the admission of the hearsay statements by the victim's son pursuant to the excited utterance exception of the hearsay rule. We conclude that such statements were improperly admitted.

██ Before a statement can be admitted pursuant to the excited utterance exception to the hearsay rule set out in CRE 803(2), several conditions must be met, including that there must be enough direct or circumstantial evidence to allow the jury to infer the declarant had the opportunity to observe the event or occurrence which is the subject of the hearsay statement. *People v. Dement*, 661 P.2d 675 (Colo.1983).

██ Here, the evidence presented to the jury wholly failed to satisfy this prerequisite. There was no direct evidence that the victim's son witnessed the stabbing. Circumstantial evidence offered to satisfy this prerequisite consisted of the testimony of the victim's cousin, who stated that she saw the boy at the victim's side after the victim entered an upstairs bedroom following the stabbing. However, contrary to the People's assertion, this witness specifically stated that she had not seen the boy enter with his mother. The victim's sister offered no testimony on this issue.

The only other evidence offered to support the People's position was the testimony of the victim's father that the boy accompanied his mother "everywhere," and that he would not be surprised to learn that the boy had been with his mother when she was stabbed.

We are unpersuaded that this evidence fairly supports an inference that the boy witnessed the stabbing. Therefore, it was error to permit evidence of the hearsay statements to be presented to the jury. On retrial, if the evidence of the boy witnessing the stabbing consists only of that presented here, the hearsay statements should not be admitted.

## III.

██ Also, although counsel's closing argument on retrial will undoubtedly be different, we would point out the impropriety of one statement made by the prosecutor.

Although defendant's theory of the case was that an intruder committed the crime, instructions on the lesser included offenses of reckless manslaughter and criminally negligent homicide were given to the jury. During initial closing argument, the prosecution stated:

> "So while defense counsel stands before you and tries to get that horse called intruder home to you, I want you to think about a few things. If the issue is identity, then why have you been instructed on lesser included offenses?"

This statement was misleading to the jury and should not be repeated on retrial. *See People v. Carrier*, 791 P.2d 1204 (Colo. App.1990).

## IV.

■ Defendant also questions the fairness of the trial based on the fact that the trial judge absented himself from the courtroom with his reporter while the videotapes were being shown to the jury.

We disapprove of a trial judge being absent from the courtroom during any phase of a criminal jury trial while evidence is being introduced. We do so, not only to insure that the trial judge is aware of all of the evidence in the context and circumstances in which it is presented, but also because the judge's presence at all times when the jury is in the courtroom with counsel is essential to maintaining his or her role as the impartial arbiter in the adversarial process. *See Graves v. People*, 32 Colo. 127, 75 P. 412 (1904).

The judgment is reversed and the cause is remanded for a new trial.

PIERCE and DAVIDSON, JJ., concur.