**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert B. LANARI, Defendant–Appellant.**

**No. 93CA2081.**

Colorado Court of Appeals, Div. V.

March 7, 1996.

As Modified on Denial of Rehearing May 2, 1996.*

Certiorari Denied Oct. 21, 1996.

---

* Casebolt, J., would GRANT petition of Defendant-Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Clement P. Engle, Senior Assistant Attorney General, Denver, for Plaintiff–Appellee.

David Vela, Colorado State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

In this appeal relative to a judgment of conviction of first degree murder and attempted first degree murder, defendant, Robert B. Lanari, challenges an order of the trial court denying his motion for substitution of judge and urges error in the exclusion of the testimony of an expert witness pursuant to CRE 702. He also challenges his sentence. We affirm.

Defendant and his wife separated in March 1986 and she subsequently established an intimate relationship with defendant's close friend and neighbor. On the morning of June 10, 1986, the wife revealed this relationship to defendant and they agreed to meet at the friend's house later that evening to talk. Shortly after arriving at the friend's house, defendant shot and killed the friend and seriously wounded his wife.

At trial, defendant asserted, *inter alia*, a heat of passion manslaughter defense and endorsed a psychiatric witness to testify in support of this claim. However, the trial court granted the People's pretrial motion to prohibit the psychiatrist from testifying. The jury was instructed on the elements of heat of passion manslaughter, but found defendant guilty of first degree murder and attempted first degree murder.

On appeal, a division of this court affirmed, holding, *inter alia*, that the trial court did not abuse its discretion in excluding the psychiatrist's testimony. *See People v. Lanari*, 811 P.2d 399 (Colo.App.1989). On certiorari review, the supreme court remanded the case for further proceedings on that issue because it found the record inadequate to permit informed appellate review of the trial court's exercise of its discretion under CRE 702.

*See Lanari v. People,* 827 P.2d 495 (Colo. 1992).

Specifically, the supreme court determined that the trial court had not clearly explained the basis for its ruling, had made erroneous observations concerning heat of passion manslaughter and its relationship to the defenses of insanity and impaired mental condition, and that defendant's offer of proof failed to identify the precise basis for the psychiatrist's opinions. It therefore concluded that further proceedings were necessary to establish a sufficient basis for the trial court's exercise of discretion under CRE 702.

Upon remand to the trial court, defendant filed a motion for substitution of the judge in which he alleged that the trial judge was not fair and impartial on this issue and that the judge's rulings in the matter suggested that he was biased against defendant. The People responded that the motion did not state legally sufficient grounds for disqualification and was not timely filed.

To avoid any appearance of impropriety, the trial judge transferred the motion for substitution to the chief district court judge for a ruling on possible disqualification. After a hearing on the matter, the chief judge determined that the motion did not state sufficient legal grounds for disqualification and was untimely filed. Accordingly, the case was returned to the original trial judge to determine the admissibility of the expert testimony.

In June 1993, defendant submitted a seven-page written offer of proof as to the psychiatrist's proposed testimony. After a hearing based on the offer of proof and the supreme court's remand order, the trial court issued a detailed written order again concluding that the testimony should be excluded. The court found that the offer of proof did not sufficiently discuss facts which would support the psychiatrist's conclusions, that the scope of his opinions was so broad as to be irrelevant, and that the content of his proposed testimony was too vague to be of assistance to the jury. This appeal followed.

## I. Motion for Substitution of Judge

First, defendant contends that the trial court erred in denying his motion for substi-

tution of the judge pursuant to § 16–6–201(d), C.R.S. (1986 Repl.Vol. 8A) and Crim.P. 21. We do not agree.

### A.

The People assert that defendant's motion was not timely filed. However, even if we assume that defendant filed his motion for substitution of the judge in a timely manner, we nevertheless find the motion legally insufficient to establish bias or prejudice.

■ To be legally sufficient, a motion for disqualification of a judge and supporting affidavits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that in all probability will prevent him or her from dealing fairly with the defendant. *People v. District Court,* 898 P.2d 1058 (Colo.1995).

■ Here, defendant asserts that the trial court's prior ruling on the admissibility of the psychiatrist, which was based on the judge's erroneous views on heat of passion manslaughter, created a strong appearance of bias. However, a judge's rulings on issues presented in prior proceedings, even if erroneous, are insufficient by themselves to demonstrate disqualifying bias or prejudice. *Walker v. People,* 126 Colo. 135, 248 P.2d 287 (1952); *People v. Boehmer,* 767 P.2d 787 (Colo.App.1988).

Thus, even if it were deemed to be timely filed, defendant's motion and affidavits failed to establish prejudice by the judge against the defendant, and hence, the motion was properly denied.

### B.

We also reject defendant's contention that by transferring the motion for substitution to another judge, the trial judge effectively recused himself from further consideration of any issue in the case.

■ Because defendant did not raise this issue before the trial court, we consider his claim under the plain error standard of review. *People v. Atkins,* 885 P.2d 243 (Colo. App.1994); Crim.P. 52(b). Under this standard, the record must show that the alleged

error so undermined the basic fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

■ Section 16–6–201, C.R.S. (1986 Repl. Vol. 8A) and Crim.P. 21 provide the procedure for the disqualification of a judge if he or she is "in any way interested or prejudiced with respect to the case, the parties, or counsel." Section 16–6–201(3), C.R.S. (1986 Repl.Vol. 8A) further provides that if the verified motion for change of judge and supporting affidavits state facts showing grounds for disqualification, the judge must enter an order disqualifying himself or herself. After such disqualification, the judge may require a full hearing on the issues raised by the affidavits and shall request that another judge conduct the hearing. *See People in Interest of A.L.C.,* 660 P.2d 917 (Colo. App.1982).

Similarly, Crim.P. 21(b) provides that when the motion and affidavits sufficiently state facts showing grounds for disqualification, the judge must enter an order disqualifying himself or herself and then "notify ... the chief judge of the district, who shall assign another judge...."

Here, the original trial court judge did not purport to disqualify himself and did not find that defendant had sufficiently stated facts requiring disqualification. Even though he could have decided the motion for substitution of judge himself, he, nevertheless, acting out of an abundance of caution, requested that the chief judge rule on this motion.

■ In our view, the referral of the motion for substitution of judge to the chief judge was not an abuse of discretion, and such procedure did not result in the intentional or unintentional disqualification of the trial court judge. Indeed, nothing in either § 16–6–201 or Crim.P. 21(b) precludes the use of such a procedure in order to determine the sufficiency of the allegations of a motion for substitution of judge.

Furthermore, once the chief judge determined that the motion for substitution of judge should be denied, it was appropriate for him to remand the case to the original trial court judge. *See People in Interest of*

*A.L.C., supra* (if after hearing a motion to disqualify a judge, and concluding that the findings do not support disqualification, the challenged judge may resume consideration of the case).

Defendant also asserts that *Beckord v. District Court,* 698 P.2d 1323 (Colo.1985) supports his proposition. However, *Beckord* is distinguishable from the instant case. In that case, the judge presiding over a multi-district litigation reassigned part of the consolidated action, which he concluded would be improper for him to hear, to another judge. The supreme court determined that the judge could not recuse himself from only one part of the multi-district litigation and that, therefore, his transfer of one issue effectively disqualified him from hearing any issue in the case.

Here, unlike the situation in *Beckord,* the trial judge made no conclusions that it would be improper for him to consider the issue on remand.

The actions of the trial judge did not prejudice defendant, did not undermine the fairness of the trial, and were not error, much less plain error. *Wilson v. People, supra.* Thus, the original trial court judge was not precluded from presiding over the issues on remand. *See People in Interest of A.L.C.,* 660 P.2d 917 (Colo.App.1982) (if findings at hearing before second judge do not support disqualification, the challenged judge may resume consideration of the case).

## II. Admissibility of Expert Testimony

Next, defendant contends that, on remand, the trial court erred in once again excluding the psychiatrist's expert testimony pursuant to CRE 702. We are not persuaded.

■ Trial courts possess broad discretion under CRE 702 either to allow or to prohibit testimony by expert witnesses in criminal cases and an exercise of that discretion will not be overturned absent a showing of manifest error. *People v. Fasy,* 829 P.2d 1314 (Colo.1992). However, in order to make an informed exercise of discretion, a trial court must be sufficiently apprised of the nature and substance of the proposed testimony. *Lanari v. People, supra.*

After reviewing the offer of proof, the trial court must determine whether the proffered evidence will assist the fact finder to either understand other evidence or to determine a fact in issue. *Melville v. Southward,* 791 P.2d 383 (Colo.1990). More specifically, the supreme court in *Lanari v. People, supra,* stated that, in exercising its discretion under CRE 702, a court should consider numerous factors, including the nature and extent of evidence in the case, the expertise of the proposed witness, the sufficiency and extent of the foundational evidence upon which the expert witness' ultimate opinion is to be based, and the scope and content of the opinion itself.

Here, after reviewing the psychiatrist's seven-page offer of proof, the trial court again determined that his expert testimony should be excluded under CRE 702. In reaching its conclusion, the trial court carefully examined the psychiatrist's offer of proof in light of the specific factors set forth in *Lanari v. People, supra.*

First, as to the nature and extent of other evidence, the court determined that defendant's testimony did not clearly establish that he acted in the heat of passion. Moreover, there was evidence, much of it uncontradicted, that pertained to defendant's state of mind at the time of the shooting, and whether he acted after deliberation or upon sudden heat of passion.

We note that, although the trial court discussed the inconsistency of some of the evidence presented, it was not, in our view, weighing the credibility of that evidence, but rather was attempting to consider the "nature and extent" of it. Nevertheless, any error in that respect was harmless because the court's ruling was also based on the other factors set forth in the supreme court's *Lanari* opinion which adequately and properly support its exercise of discretion.

Next, the trial court determined that, although the psychiatrist's expertise and the foundational evidence were sufficiently established, the offer of proof described few, if any, facts upon which the psychiatrist relied in forming his opinions.

Additionally, the trial court set forth in great detail its findings as to the scope and content of the expert's proposed testimony. The court determined that on six of seven issues to be addressed by the psychiatrist's proposed testimony, the opinions were "wholly conclusory" and did not contain a supporting factual basis. Indeed, of major significance, the psychiatrist did not offer to describe the kinds of acts that might, under the circumstances of this case, excite an irresistible passion in a reasonable person.

With respect to the seventh issue, defendant's theory of cumulative provocation, the court concluded that although the offer of proof set forth a sufficiently specific factual predicate, it did not adequately explain the significant intervals between the assertedly provoking acts of rejection and the final act of provocation.

The court also was unable to ascertain, in the context of cumulative provocation, which acts or series of acts the psychiatrist believed were sufficient to trigger irresistible passion, and it noted that the psychiatrist did not provide examples or criteria from his experience or research that might have assisted the jury in evaluating the evidence.

In addition, we note that cumulative provocation is not a permitted a basis for heat of passion manslaughter. Under the statutory language applicable here, defendant's sudden passion must be caused by one serious and highly provoking act of the intended victim. *Coston v. People,* 633 P.2d 470 (Colo.1981). Accordingly, the offer of proof failed to demonstrate provocation as a matter of law.

Further, there was conflicting evidence as to defendant's state of mind before and after the shooting and because the psychiatrist did not state which version of the evidence he relied on in reaching his conclusions, the court found that the offer of proof failed to present an adequate factual basis for the expert's opinions.

Finally, the court determined that the offer of proof failed to posit a relationship between the specific circumstances of the case and any of the elements of heat of passion manslaughter. For example, the of-

fer did not allege a serious and highly provoking act, nor did it attempt to explain whether the time between defendant finding out about the relationship and the shooting, with its intervening events, would be a sufficient cooling off period.

Thus, the court concluded that: (1) the psychiatrist's offer of proof did not state sufficient factual detail to support his opinions; (2) the scope of his opinions was so broad as to be irrelevant; and (3) the content of his opinions was too vague to be of assistance to the jury.

In our view, the trial court carefully reviewed the expert's offer of proof pursuant to the principles of CRE 702 and the supreme court's holding in *Lanari v. People, supra,* and properly exercised its discretion to exclude the testimony.

Moreover, even if part of the testimony offered was relevant and admissible, it was not error for the trial court to exclude the entire offer of proof. *See* 1 J. Strong, *McCormick on Evidence* § 51 (1992) ("If counsel offers the good and the bad together and the judge rejects the entire offer, the offeror may not complain on appeal."); *United States v. Lachman,* 48 F.3d 586 (1st Cir. 1995) (it is the job of counsel and not the judge to segregate relevant material from irrelevant material in the proffered evidence).

Thus, because we conclude that the court's ruling excluding the psychiatrist's testimony was not manifestly erroneous, we reject defendant's contention and decline to disturb the trial court's ruling.

### III. Constitutional Right to Present a Defense

Defendant further contends that by excluding the proffered testimony, the trial court denied him the constitutional right to present a defense. We disagree.

■ Few rights are more fundamental than that of the accused to present witnesses in his or her own defense. *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *People v. Richards,* 795 P.2d 1343 (Colo.App.1989). However, this right is not absolute and is subject to pruden-

tial considerations necessary to accommodate other legitimate interests of the criminal trial process. *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Moreover, not all evidentiary exclusions are of a constitutional magnitude. *People v. Bell,* 809 P.2d 1026 (Colo.App.1990).

■ Here, we have determined that the trial court properly excluded the testimony of defendant's proffered expert witness pursuant to its discretion under CRE 702 because the testimony was not factually supported and would not have been of assistance to the jury.

In addition, the record reveals that defendant was not completely precluded from presenting a defense. For example, defendant testified on his own behalf in support of his heat of passion defense, other defense witnesses testified to defendant's state of mind before and after the shooting, and the court instructed the jury on the elements of heat of passion manslaughter. Accordingly, in our view, defendant was able to present a constitutionally adequate defense.

Hence, we conclude that no constitutional right of defendant has been violated. *People v. Pronovost,* 773 P.2d 555 (Colo.1989).

### IV. Sentencing

Finally, defendant contends that the trial court erred in determining that the applicable sentencing statutes required consecutive sentences for his two crimes. Specifically, he contends that the crime of violence sentencing statute cannot be applied to a life sentence for first degree murder because the presumptive range concept contained in that statute is not applicable to a life sentence. We do not agree.

■ At the time of the offense, the applicable sentencing statute, § 16–11–309, C.R.S. (1986 Repl.Vol. 8A), provided in pertinent part: "A person convicted of two separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that the sentences are served consecutively rather than concurrently."

This statute is not ambiguous. It expressly mandates that defendant's sen-

tences, whatever their length may be, must run consecutively to each other. Thus, the imposition of concurrent sentences here would impermissibly disregard the General Assembly's primary intent and circumvent the mandatory sentencing scheme. *Robles v. People*, 811 P.2d 804 (Colo.1991).

Here, the trial court relied on § 16–11–309 in sentencing defendant for convictions of first degree murder and attempted first degree murder—both crimes of violence that arose out of the same incident. Although defendant asserts that the trial court had discretion to sentence him to concurrent terms, we conclude that the trial court properly adhered to the applicable sentencing statute.

Order and sentence affirmed.

ROTHENBERG, J., concurs.

CASEBOLT, J., concurs in part and dissents in part.

Judge CASEBOLT concurring in part and dissenting in part.

Because I believe that the trial court abused its discretion in excluding expert psychiatric evidence concerning heat of passion at the time of the shooting, I respectfully dissent as to part II. I concur with the majority's disposition in part I. Further, I would not reach the issues contained in parts III and IV of the majority opinion.

I.

Expert testimony is admissible under CRE 702 if it will assist the jury either to understand other evidence or to determine a fact in issue. *Lanari v. People*, 827 P.2d 495 (Colo.1992). The pivotal question is whether "on *this subject*, can a jury from *this person* receive appreciable help?" *People v. Williams*, 790 P.2d 796, 798 (Colo.1990) (emphasis in original).

In determining admissibility, the trial court retains broad discretion and the exercise of that discretion will not be overturned in the absence of manifest error. *Lanari v. People, supra.*

To say that a trial court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and that it is not bound in all cases to select one over the other. *Colorado National Bank v. Friedman*, 846 P.2d 159 (Colo.1993).

To establish that a court has abused its discretion it must appear that the court's choice of a particular course of action was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). However, if the court misapplies the appropriate legal standard in exercising its discretion, that, too, constitutes an abuse of discretion. *See Kuhn v. State*, 817 P.2d 101 (Colo.1991); *People v. Cole*, 654 P.2d 830 (Colo.1982).

In exercising discretion under CRE 702 to determine the admissibility of expert testimony, the supreme court has ruled that the trial court must consider the elements of the particular offenses involved, the nature and extent of other evidence in the case, the expertise of the proposed expert witness, the sufficiency and extent of the foundational evidence upon which the expert witness' ultimate opinion is to be based, and the scope and content of the opinion itself. *Lanari v. People, supra.*

There are two categories of topics that are potentially appropriate for expert psychiatric testimony in a case in which provoked passion manslaughter is an issue.

First, an expert may be permitted to describe the characteristics of heat of passion manslaughter in general terms and the reactions of people to highly provoking acts. *Lanari v. People, supra.* Such testimony should be grounded upon the expert's specialized knowledge in the field of expertise in which the expert is qualified by knowledge, skill, experience, training, or education, and should not be merely an interpretation of what the law is. *See People v. Williams, supra.* Expert testimony concerning such conduct may be particularly helpful because it is "counterintuitive" or "contrary to common wisdom," inasmuch as a jury may have difficulty understanding how a reasonable person can be overcome by heat of passion. *See People v. Campbell*, 847 P.2d 228 (Colo. App.1992).

Second, an expert may evaluate a particular defendant's conduct at the time of the commission of the crime, and may render an opinion that the defendant's conduct was consistent or inconsistent with the state of mind required to meet the statutory culpable mental state. This testimony would be based upon the expert's familiarity with the characteristics of a particular defendant, his or her knowledge concerning the commission of the crime, and other foundational evidence. *Lanari v. People, supra.* At the same time, however, an expert must avoid testifying that a particular witness is being truthful, and must not simply tell the jury what result to reach. *People v. Gaffney*, 769 P.2d 1081 (Colo.1989).

Here, the trial court found the offer of proof tendered by defendant to be deficient, ruling that the offer did not state sufficient factual detail to support the expert's opinions; the scope of the opinions was so broad as to be irrelevant; and the content of the expert's opinions was too vague to be of assistance to the jury. Were I simply to disagree with the trial court, yet recognize that there were grounds to support its ruling, no abuse of discretion could be found.

However, based on my review, this determination was predicated upon an incorrect analysis and application of the legal standard required by *Lanari v. People, supra,* and was also manifestly unreasonable and unfair, in part because the trial court excluded the whole of the proffered evidence and in part because of the sufficiency of the offer of proof.

## II.

Defendant filed a seven-page offer of proof. The global opinion to be offered can be briefly summarized: the expert would testify to the degree of provocation necessary to produce an irresistible passion in a reasonable person and the psychological reactions of persons to highly provoking conduct, including examples to the jury of highly provoking conduct and how reasonable people might react to such provocation. The expert would further offer the opinion that the defendant was acting under the heat of passion at the time of the offense, as a result of cumulative provocation.

The offer of proof then summarized the expertise of the proposed witness. The witness, a psychiatrist, was familiar with the psychological reactions of people in general to highly provoking acts, particularly in situations involving divorce. He was a diplomate of the American Board of Forensic Psychiatry and, for over thirty years, had been appointed by courts and hired by prosecuting and defense attorneys to evaluate criminal defendants concerning legal sanity, impaired mental condition, voluntariness of statements, witness competency, competency to proceed and to dismiss counsel, impairment of ability to form various mental states, and psychological suitability for probation. The expert had personally evaluated defendants for the presence of heat of passion and had qualified as an expert in that area at least five times previously. Further, he had worked extensively on civil cases, evaluated persons with traumatic neuroses, assessed allegations of emotional distress, and evaluated psychiatric cases for malpractice claims.

The expert was prepared to testify that defendant was suffering from a paranoid personality disorder consisting of a pervasive and unwanted tendency to interpret the actions of people as deliberately demeaning or threatening. This diagnosis was, according to the expert, severely aggravated by the disintegration of defendant's marriage.

The offer then set forth the diagnostic criteria for that finding. It further indicated that the expert would explain the features of that disorder and its applicability to the defendant.

This was preceded and followed by a recitation of facts that supported the expert's determination, which included the following:

1. the filing of a petition for dissolution of marriage;

2. the defendant's wife informing defendant of her romantic relationship with defendant's best friend on the day of the shooting;

3. the arrangement of a meeting between defendant, his wife, and the best friend;

4. the fact that defendant's best friend had been specifically asked by defendant to "look after" defendant's wife by defendant while he was out-of-state;

5. previous infidelities by the defendant's wife with good friends of the defendant;

6. during a conversation on the day of the shooting between defendant and his wife, defendant's threats of suicide followed by assurances of love and concern from defendant's wife;

7. the decision to take a gun to the meeting, professed by defendant to be for self-protection and as a response to his perception of threats.

The offer then described the occurrences at the meeting among the defendant, his wife, and the best friend. These included defendant's observations of domestic intimacy between defendant's wife and his best friend and an act of physically intimate touching between them.

The expert would opine, based upon these facts, that these events resulted in an irresistible passion that triggered defendant's acts and that defendant was not necessarily planning murder.

The offer of proof then explained how the expert would assist the jury in understanding the way in which those provocations affected defendant, explaining the psychological process and the manner in which the actions provoked feelings of loss, rage, humiliation, panic, and fear.

The offer continued by setting forth the expert's view that people do not generally understand the ability of one person to provoke an irresistible passion in another and that such ability is generally underestimated. The expert would opine that, in eighty percent of those cases that he had examined to determine the presence of heat of passion, he was unable to conclude that it existed, but in defendant's case, he believed that it did exist.

The expert further offered to assist the jury in determining whether a sufficient interval of time had passed between the provoking events for defendant to have heeded a voice of reason and offered to explain the factors involved in determining a sufficient cooling off period. He would opine that defendant did not have a sufficient interval of time to heed the voice of reason.

Finally, the expert would have advised the jury that heat of passion was different from being insane or suffering from an impaired mental condition, and proposed to tell the jury why.

As a basis for these opinions, the expert proffered that he had met with and evaluated defendant for seven to eight hours, that he had reviewed all the police reports, collected information about defendant's responses to various stresses and situations, and discussed defendant's fantasies and facts of his life with defendant.

The trial court, in analyzing this offer of proof, looked first at the nature and extent of other evidence. It determined that defendant's testimony did not "clearly establish that he acted in the heat of passion," noting, however, that defendant had testified that his conduct was impulsive, inexplicable, and unremembered. The court then described the evidence concerning the events of the day of the shooting and pointed out various inconsistencies between defendant's trial testimony and his statements to the expert and differences between defendant's testimony and that of other witnesses.

The record reflects, however, defendant's testimony that he spent the day of the shooting in an emotional turmoil and that he was overcome by depression, shock, grief, and sadness. He further testified that the shooting was "an emotional thing" and that he "just kind of snapped" after seeing the physical contact between his wife and best friend. Indeed, as noted above, the court's finding even acknowledges that defendant had testified that his conduct was impulsive and inexplicable.

This testimony provides at least some evidence concerning heat of passion. Furthermore, a heat of passion instruction was given at trial; hence, the trial court must have already concluded that there was sufficient evidence to justify the instruction and, correspondingly, sufficient evidence to prove that fact if the jury believed the proffered evidence.

Reliance upon "inconsistencies" in the evidence as a ground for excluding the expert's testimony invades the province of the fact-finder. *See McCune v. People,* 179 Colo. 262, 499 P.2d 1184 (1972) (once expert is qualified, credibility and weight of the testimony is a jury question); *People v. Jiminez,* 187 Colo. 97, 528 P.2d 913 (1974) (it is the jury's function to resolve conflicts in the evidence).

In my view, the trial court misunderstood and misapplied the element of "the nature and extent of the other evidence" set forth by the supreme court in *Lanari v. People, supra.* I read that opinion to indicate, *inter alia,* that, under that factor, the trial court should decide whether there is sufficient evidence to support the introduction of the opinions of the expert to determine a fact in issue without regard to countervailing evidence, and it should determine whether the opinions will assist the trier of fact in understanding the other evidence in the case. I do not read the opinion as directing the trial court to engage in a credibility analysis or to balance or weigh the facts presented for this purpose.

Nor was this misapplication, in my view, limited only to the discussion concerning the nature and extent of the other evidence in the case. Rather, the trial court continued to engage in such an analysis in determining whether the expert had a sufficient foundation upon which to base an opinion that defendant was acting under heat of passion.

For example, the court recited conflicting testimony of several witnesses and concluded that the expert did not state which version of the evidence he had relied upon in reaching his conclusions and did not state whether and to what extent his opinion would be altered if he were to assume the truth of certain statements. The trial court relied upon this conflict in determining that the offer did not state sufficient factual detail to support the expert's opinions and that the scope of the opinions was so broad as to be irrelevant. In contrast, I do not perceive that the expert needs to set forth how his opinion would be altered by any conflict in the evidence. Rather, this area should be reserved for cross-examination after the opinion has been received.

Thus, while the trial court concluded that the offer of proof set forth few, if any, facts upon which the expert relied in forming his opinions, I believe that it reached that conclusion via a misanalysis and misapplication of the standard set forth by the supreme court in *Lanari v. People, supra.*

In summary, I believe that the trial court misapplied the relevant standards in exercising its discretion in this matter. Further, because of the sufficiency of the offer of proof and the importance of the proffered opinion to the defendant's defense, *see Miller v. District Court,* 737 P.2d 834 (Colo.1987); *People v. Campbell, supra,* the trial court's ruling was manifestly unreasonable. Thus, I would find an abuse of discretion and would, accordingly, reverse the order.

Because of these views, I would not reach defendant's contention that the exclusion of this evidence violated his constitutional right to present a defense, nor his contentions concerning sentencing.