The **PEOPLE** of the State of Colorado, Petitioner,

v.

**Walter A. SEPULVEDA, Respondent.**

No. 02SC6.

Supreme Court of Colorado, En Banc.

Jan. 13, 2003.

ter deliberation. Over the objections of the defendant, the trial court instructed the jury that it could not consider intoxication as a defense to the "after deliberation" element of first-degree murder. Sepulveda appealed his conviction.

In *People v. Harlan*, 8 P.3d 448 (Colo. 2000), published after Sepulveda's trial, we concluded that the trial court should instruct the jury that the "after deliberation" element can be negated by evidence of self-induced intoxication. Because the People thus anticipated reversal of Sepulveda's first-degree murder conviction based upon *Harlan*, the People requested that the court of appeals afford the prosecutor the option of either conducting a new trial or accepting a judgment of conviction on the lesser included offense of second-degree murder. The court reversed the conviction but declined the People's request, remanding the case for a new trial. *People v. Sepulveda*, No. 00CA762, slip op. at 5 (Colo.App. Nov. 8, 2001) (not selected for official publication).

We agree with the court of appeals' conclusion that the jury instruction error was not harmless beyond a reasonable doubt. However, because the jury verdict on first-degree murder, absent the tainted element of "after deliberation" established all of the elements of second-degree murder, we grant the prosecution the option on remand to request the trial court to enter a conviction for that charge. Therefore, we reverse that portion of the court of appeals' opinion.

Ken Salazar, Attorney General, John J. Fuerst III, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In this case, a jury convicted defendant, Walter Sepulveda, of first-degree murder af-

## I. Facts

Walter Sepulveda and Robert Kuzov were not friends. They knew each other, and may even have been distant relatives; however, when Kuzov became a prosecution witness in a case against Sepulveda's brother, Sepulveda was angry. Friends apparently recognized that the two needed to keep their distance.[1]

On February 6, 1999, friends gave a birthday party for Sepulveda at their home. They did not invite Kuzov because they did

---

1. The brother confessed guilt, entered into a plea agreement and obviated any need for the testimony.

not want to encourage a confrontation. Nonetheless, one guest invited him to the party, while apparently cautioning him that Sepulveda would obviously be there.

In the early hours of that morning, Kuzov entered the home with a friend. Within seconds, Sepulveda attacked him with a six-and-a-quarter inch knife, stabbing him thirteen times. Minutes later, Kuzov died.

Sepulveda testified at trial that he did not remember the attack. While he admitted that he was angered when he read Kuzov's statement about his brother, that it made him want to hurt Kuzov, he said that those feelings of anger went away because he realized he could not do anything about the situation.

Witnesses testified that the attack was hasty and immediate and no one suggested that Kuzov did anything to provoke it. Those who saw the attack agreed that Sepulveda quickly approached Kuzov, that they were "in each other's face," and that Sepulveda threw the first punch. Most believed the two were fist fighting, as no one clearly saw either wielding a weapon. Some witnesses believed they heard a male voice accusing Kuzov of being a "snitch" or telling him to leave. At least one person witnessed Kuzov deny that accusation, but no one heard Kuzov say anything to encourage the attack.

The theory of the defense was that Sepulveda stabbed the victim during a fight in which he was trying to convince the victim to leave. The defense argued that the defendant "was slugging [the victim] with wild blows .... as if there is a non recognition that [he had] a knife in [his] hands while [ ] swinging to get Robert Kuzov out of the house." However, Dr. Canfield, who performed the autopsy, testified that the victim had no torn fingernails, his knuckles were not bruised, his hands were not cut, and he did not have any broken bones in his hands. No one saw Kuzov wield any weapon nor was one found on his person later. Kuzov suffered thirteen stab wounds, three of which were potentially lethal, and a bruise on his lip. Sepulveda stabbed himself once in the arm.

In closing arguments, the defense argued that the attack was impulsive and hasty, and that Sepulveda was engaged in an unthinking flurry of activity. However, counsel advanced no theory that the attack was provoked by any conduct of the victim, other than the victim's decision to appear where he allegedly knew he was unwelcome.

The trial court instructed the jury: "You may consider evidence of the defendant's self-induced intoxication when you consider whether the People have proved beyond a reasonable doubt that the defendant acted 'with intent'.... [But] the defendant's self-induced intoxication is not a defense to 'after deliberation'...." The jury convicted Sepulveda of first-degree murder.

The court of appeals properly held that the instruction had the effect of excluding consideration of intoxication as to the element of deliberation, which conflicts with section 18–1–804(1), 6 C.R.S. (2002) and with our holding in *People v. Harlan*, 8 P.3d 448 (Colo.2000). The error had the effect of undermining the jury verdict on an essential element of the crime charged, and led to the reversal of the first-degree murder conviction. The question before us today is whether the jury's verdict does support a conviction for second-degree murder and whether the People should be permitted to have the option of requesting entry of a conviction on the lesser offense rather than proceeding to a new trial on the greater offense.

## II. The Elements

A jury convicted Sepulveda of first-degree murder. Necessarily, the jury found that Sepulveda acted with intent and after deliberation to cause the death of the victim. The faulty instruction voided only the jury's conclusion regarding whether Sepulveda acted after deliberation. *People v. Sepulveda*, No. 00CA0762, slip op. at 4 (Colo.App. Nov. 8, 2001).

To establish second-degree murder, the People needed only to prove that Sepulveda knowingly caused the death of the victim. § 18–3–103(1), 6 C.R.S. (2002).[2] A

2. The trial court instructed the jury in pertinent part as follows:

person acts knowingly when he is aware that his conduct is practically certain to cause the result. § 18–1–501(6), 6 C.R.S. (2002). Because the jury found that Sepulveda acted intentionally, or with the conscious objective of causing death, the jury implicitly found that Sepulveda acted knowingly.

■ Second-degree murder is a class 2 felony for sentencing purposes unless the defendant performed the act causing the death upon a sudden heat of passion, in which case the crime is reduced to a class 3 felony. § 18–3–103(3). In this case, the instructions offered to the jury did not include an instruction directing the jury to evaluate whether the defendant acted in the heat of passion. Sepulveda argues that he cannot be subject to a second-degree murder conviction without the opportunity to have a jury determine whether he acted in a heat of passion.[3] He contends that the evidence in his case clearly supports the instruction.

■ Sepulveda did not request a heat of passion instruction at trial. Before submitting the instructions to the jury, the trial court reviewed them with both counsel. Neither counsel objected to the lack of an instruction on heat of passion. Absent an objection at trial to the instructions given, this court applies the plain error standard of review. *People v. Ramirez*, 56 P.3d 89, 93 (2002); *People v. Garcia*, 28 P.3d 340, 345 (Colo.2001); *People v. Dunlap*, 975 P.2d 723, 737 (Colo.1999) ("If the defendant lodges no objection to the evidence or procedure, then this court will consider the error only under the plain error standard even in a death penalty case."); *Walker v. People*, 932 P.2d 303, 311 (Colo.1997); *People v. Davis*, 794 P.2d 159, 189 (Colo.1990); *People v. Romero*, 694 P.2d 1256, 1268 (Colo.1985); *see* Crim. P. 52(b). Reversal is required only when an error so undermined the fundamental fair-

ness of the proceeding as to cast serious doubt on the reliability of the judgment. *Walker*, 932 P.2d at 311; *People v. Kruse*, 839 P.2d 1, 3 (Colo.1992). "An accused may not withhold his objections until completion of his trial and after conviction, and later complain of matters which, if he had made a timely objection, would have allowed the trial court to take corrective action." *People v. Rollins*, 892 P.2d 866, 874 n. 13 (Colo.1995) (citing *People v. Girtman*, 695 P.2d 759, 761 (Colo.App.1984)). Consequently, if we were reviewing a second-degree murder conviction on appeal, we would review the record to see if the absence of the heat of passion instruction was plain error.

■ Here, because we are not examining the appeal of a second-degree murder conviction but are rather determining whether the People are entitled to the benefit of a verdict on the lesser included charge, we do not hold the defense to a strict plain error standard. Rather, we now look to the record to determine whether the evidence presented at trial sufficiently sustains all the elements of the lesser included offense, and whether undue prejudice will result to the defendant by the possible entry of a conviction of that lesser included offense. *See Rutledge v. United States*, 517 U.S. 292, 305–306, 305 n. 15, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (approving the practice of substituting conviction for a lesser included offense when a conviction for a greater offense is reversed on grounds exclusively related to the greater offense and noting the standard adopted by the District of Columbia Circuit restricting such authority to cases in which no undue prejudice will result to the defendant). If the evidence supports the giving of an instruction on heat of passion, then clearly the defendant would suffer undue prejudice by the entry of a conviction on second-degree murder. How-

---

The offense of Murder in the First Degree After Deliberation as charged in the information in this case necessarily includes the lesser offenses of Murder in the Second Degree or Manslaughter.

The elements of the crime of Murder in the Second Degree are:
1. That the defendant,
2. in the State of Colorado, on or about February 6, 1999,
3. knowingly,

4. caused the death of Robert Anthony Kuzov.

**3.** Sepulveda argues that if he receives a new trial, he would request a heat of passion instruction. However, he is entitled to have a jury consider heat of passion only if the evidence supports such an instruction. *People v. Ramirez*, 56 P.3d 89, 93 (2002).

ever, the record must reflect some evidence that would support the instruction. *See Coston v. People*, 633 P.2d 470, 472 (Colo.1981).

■■■ Provocation is a statutory mitigating factor that will reduce a defendant's sentence from a class 2 felony to a class 3 felony, but it is not an element of a separate offense. The jury is to consider whether the second-degree murder offense is mitigated by provocation only if it first concludes that the defendant is guilty of second-degree murder. If the evidence raises the issue of provocation, the prosecution must prove the lack of provocation beyond a reasonable doubt. *People v. Garcia*, 28 P.3d 340, 346 (Colo.2001).

■■■ In order to prevent heat of passion from being considered a mitigating factor, the People must present evidence sufficient to prove the death "was [not] performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person" and that "between the provocation and the killing there [was not] an interval sufficient for the voice of reason and humanity to be heard." § 18–3–103(3)(b). Defendant's conduct is measured against the standard of an objectively reasonable person, and not by whether a reasonable person possessing the "defendant's subjective, personal traits and characteristics would have suffered an irresistible passion to kill as a result of the victim's actions." *People v. Dooley*, 944 P.2d 590, 593 (Colo.App.1997).

The defendant is not entitled to a heat of passion instruction unless the evidence shows that "an objectively reasonable person would have similarly suffered an irresistible passion to kill." *Id.* at 594.

■■■ Sepulveda suggests that his animosity toward the victim built up over time because of prior events.[4] However, cumulative provocation is an insufficient basis for a heat of passion instruction. *Coston v. People*, 633 P.2d 470, 473 (Colo.1981) (defendant's jealousy caused by victim's termination of their six-year affair and subsequent dating of an-

other man insufficient to warrant instruction); *People v. Lanari*, 926 P.2d 116, 121 (Colo.App.1996) ("cumulative provocation is not a permitted a[sic] basis for heat of passion manslaughter"). Rather the evidence must show that the defendant suffered a sudden, unanticipated loss of self-control in response to the victim's provocation. *Coston*, 633 P.2d at 473.

■■■ Sepulveda offered no evidence at trial that the victim performed any single highly provoking act whatsoever. The victim merely entered a home where a friend was co-hosting a party, after he had allegedly been warned his presence was not welcome. Moreover, his presence was unwelcome because he agreed to assist the state by acting as a witness in a case in which Sepulveda's brother was accused of a crime. Far from serving to partially exculpate Sepulveda's behavior, this retaliation violates public policy in numerous ways. In fact, had Sepulveda acted prior to his brother's confession, and had his guilt for first-degree murder been properly established, the court could have considered this an aggravating factor. *See* § 16–11–103(5)(k), 6 C.R.S. (2002) (intentionally killing a witness to a criminal offense constitutes an aggravating circumstance for class 1 felonies). We find as a matter of law that the victim's conduct would not excite the passions of a reasonable person. Therefore, Sepulveda was not entitled to an instruction on heat of passion and the trial judge submitted proper instructions for the jury to review.

Accordingly, the evidence clearly sustains all of the elements of the crime of murder in the second degree: namely, that Sepulveda knowingly caused the death of another person. Diminished responsibility due to self-induced intoxication is not a defense to murder in the second degree and Sepulveda was not entitled to jury consideration of provocation. § 18–3–103(2).

### III. Remedy

In *Crespin v. People*, 721 P.2d 688, 692 (Colo.1986), we determined that where all of

---

4. Testimony was offered that Sepulveda and the victim engaged in a verbal confrontation six months earlier.

the essential elements of a lesser-included offense are established by abundant evidence, it is proper to grant the prosecution discretion to retry the defendant, or alternatively, to request the court to resentence the defendant for the lesser offense. Thus, provided the prosecutor clearly established all of the elements of second-degree murder in this case, it is appropriate to grant the People the discretion to accept a conviction for this charge or to retry the defendant.

Sepulveda argues that the People should not be given the opportunity to choose whether to accept a conviction for second-degree murder or, alternatively, to prosecute him again for first-degree murder. He contends that this choice offers a windfall to the prosecution despite the fact that the error causing the first verdict to be voided occurred over the objection of the defense. We disagree.

 The Colorado Constitution vests the power to prosecute criminal cases with the district attorney. Colo. Const. art VI, § 13; *People v. Dist. Ct.*, 632 P.2d 1022, 1024 (Colo.1981). The district attorney has "the power to investigate and to determine who shall be prosecuted and what crimes shall be charged." *Id.* Generally, this discretion may not be interfered with by the judiciary. *Id.* Just as the district attorney has the right to exercise prosecutorial discretion in the first instance, it is our view that he or she has the right here to determine whether to retry Sepulveda or accept a verdict on murder in the second degree.

The United States Supreme Court has recognized the significant social costs attributable to retrying defendants upon trial error. *U.S. v. Mechanik*, 475 U.S. 66, 72, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). Resources of the district attorney are limited, witnesses' memories fade, witnesses move away and victims hesitate to testify again. When an error does not affect the outcome of the trial, the Court has suggested that the social costs of reversal and retrial may be unacceptable. *Id.* The error in this trial does not affect the entry of a verdict on murder in the second degree.

Sepulveda's argument fails to acknowledge that the district attorney has already met his burden of establishing beyond a reasonable doubt all of the elements of second-degree murder. We see no reason to require the People to conduct a new trial if they are willing to accept a conviction for the second-degree murder charge. Alternatively, since the facts of this case support a charge of first-degree murder, the People should not be prevented from retrying the defendant for that offense.

## IV. Conclusion

Accordingly, we reverse the court of appeals in part and return this case to them for remand to the trial court where the People may choose to request a conviction for second-degree murder, or may elect to retry the defendant for the greater offense of first-degree murder.

